HAWTHORNE, Justice.
 

 The sole issues in this case are whether certain items, listed on the inventories taken by Walter B. Hamlin, notary public, in the Succession of Mrs. Willie Armistead Land, were the separate.and paraphernal property of Mrs. Land or whether they belonged to the community which had existed between her and .her husband, John R. Land, Sr,, who predeceased her, and also whether certain-items on the inventories.are the.indi
 
 *57
 
 vidual property of Mrs. Elizabeth Land Triplett, surviving daughter of the deceased.
 

 •Mrs. Willie A. Land died on February 23, 1943, leaving as her sole heirs two children, John R.'Land, Jr., and Mrs. Elizabeth Land Triplett. A few days after her death, her succession was opened by petition filed in the Civil District Court for the Parish of Orleans by John R. Land, Jr., in which he prayed that a search be made among the effects of the deceased for any last will and testament which she may have made. This search disclosed that the decedent left a last will and testament in holographic form, dated May 7, 1942, bequeathing all the property of which she died possessed to her daughter, Mrs. Elizabeth Land Triplett, who was therein appointed as executrix of her estate with seizin and without bond.
 

 Soon after the discovery of this will in which Mrs. Land bequeathed all of her property to her daughter, John R. Land, Jr., instituted proceedings in the district court of Caddo Parish in the Succession of John R. Land. This succession had been previously closed and the heirs recognized and sent into possession by judgment therein. In this proceeding in his father’s succession, he applied for letters of administration and for an inventory of property in the Parish of Orleans, alleging that his father died possessed of this property, and that it was acquired during the existence of the community between his deceased parents. Mrs. Triplett filed opposition to the application of her brother to reopen their father’s succession. This opposition was. maintained, and the application of Land was dismissed. From this judgment Land appealed to this court. That appeal bears. Supreme Court No.. 37917, 212 La. 97, 31 So.2d 607, and was submitted to this court for decision on the same day on which the case here under consideration was argued before this court.
 

 In due course Mrs. Elizabeth Land Triplett qualified as executrix of her mother’s, succession, which had been opened in Orleans Parish. Inventories were made by Walter B. Hamlin, and it is certain items on these inventories which are the subject of this controversy.
 

 Mrs. Triplett contended that certain items of cash, stocks, and bonds left by the deceased were the separate property of her mother and formed no part of the community of acquets and gains which had existed between the deceased and her husband, John R. Land, Sr., who died on April 18, 1941. She further contended that certain items on the inventories, consisting of jewelry and bonds, were her individual property as a result of gifts made to her by her mother during her lifetime.
 

 On the other hand, John R. Land, Jr., contended that all of these items came into the possession of Mrs. Willie A. Land during the existence of the community and were community property.
 

 
 *58
 
 The total appraisement of all the property left by the decedent, as shown by the inventories, was approximately $238,000. Since Mrs. Triplett was bequeathed all of the property left by the deceased according to the terms of the will, John R. Land, Jr., can recover only two-eighths of all property decreed to be the separate property of his mother, while he will receive three-eighths of all declared to be community property— .a difference of one-eighth.
 

 To Mrs. Triplett’s contention Land filed pleas of estoppel. In these pleas he alleged that, on the separate income tax returns filed for the years 1939 and 1940 by his father and mother, bonds worth $200,000 were claimed as community property, and that Mrs. Triplett was therefore estopped, individually and as executrix, from denying that bonds worth $100,000, listed on the inventories, belonged to the succession of his father, and that she was further es-topped by reason of certain letters written to him by his mother.
 

 He also filed an exception to the jurisdiction ratione materiae of the Civil District Court for the Parish of Orleans, contending that that court was without jurisdiction to administer property belonging to the community which had existed between his father and mother, and that this property should be administered in the succession proceedings of his father in Caddo Parish.
 

 Mrs. Triplett also filed a plea of estoppel against Land, alleging that, by reason of judicial admissions made in the succession of his father that the property listed in an affidavit made in those proceedings was all. the property left by his father, he could not claim that the property in the inventories of his mother’s succession was community property.
 

 There were other pleas filed in the lower court which it is unnecessary for us to consider because no complaint was made with reference to the trial judge’s rulings thereon in his judgment from which this appeal was taken.
 

 The trial in the lower court extended over a long period of time, and the transcript as made up consists of approximately 1,500 pages, including numerous exhibits.
 

 The trial judge rendered judgment overruling the pleas of estoppel and exception to the jurisdiction filed by John R. Land, Jr., and decreeing that all the cash, stocks, and bonds, with the exception of certain war bonds or treasury certificates, were the separate and paraphernal property of Mrs. Willie A. Land, and that the war bonds or treasury certificates were the individual property of Mrs. Elizabeth Land Triplett.. From these portions of the judgment John R. Land, Jr., has appealed to this court.
 

 The lower court also overruled the plea of estoppel filed by Mrs. Triplett and dismissed her claim to the ownership of certain jewelry and bonds, which she claimed were gifts from the deceased, and decreed that all costs of the proceedings bq borne.
 
 *59
 
 by the estate. From these portions of the judgment Mrs. Triplett has appealed, individually and as executrix.
 

 The general principles of law applicable to this case are found in the Revised Civil Code.
 

 Article 2334 provides that separate property is, among other things, that which either party brings into the marriage or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly, and that common property is that which is acquired by the husband and wife during the marriage in any manner different from that above declared.
 

 Article 2402, in defining property forming a part of the community, says that this partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during marriage, either by donations 'made jointly to them both or by purchase or in any other similar way, even though the purchase may be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to and not the person who made the purchase.
 

 Under Article 2386, prior to its amendment by Act No. 286 of 1944, when paraphernal property is administered by the husband or by him and his wife indifferently, the fruits of this property, whether natural, civil, or the results of labor, belong to the conjugal partnership when there exists a community of gains; if a community does not exist, each party enjoys as he chooses that which comes to his hands, but the fruits and revenues which are existing at the dissolution of the marriage belong-to the owner of the things which produced them.
 

 John R. Land, Sr., and Mrs. Willie A. Land were married on October 21, 1896. John R. Land, Sr., died on April 18, 1941. Therefore the presumption is that any property acquired by Mrs. Land during the period of this marriage belonged to the community of acquets and gains which existed between them. For Mrs. Triplett to overcome this presumption, it is necessary that-she prove with legal certainty that the property in controversy, listed on the inventories, was acquired by her mother, Mrs. Land, as separate property, pursuant to one of the methods enumerated in Article 2334, and,, if so acquired, that it was thereafter administered and invested by Mrs. Land separately and without the assistance of her husband, and was under her separate control and administration.
 

 In brief filed in this court, Mrs. Triplettconceded that the burden of proof was on her to establish (1) that the property was-the separate and paraphernal property of her mother, (2) that it was administered.
 
 *60
 
 separately by her and without the assistance of her husband, and (3) that, if not acquired as separate property under the provisions of Article 2334, it was separate property because it constituted fruits, profit, and revenues, purchases, and reinvestments from separate property which had been acquired originally under Article 2334 and which was administered by her mother separately and without the assistance of her husband.
 

 To determine whether the bonds listed •on the inventories were acquired by Mrs. Land as her separate property, it is necessary for us to ascertain the circumstances under which she acquired these bonds or the funds used to purchase them.
 

 Amos A. Armistead, the brother of Mrs. Land, died during the month of July, 1933, leaving a last will and testament dated January 2, 1925, wholly written and signed by him, in which he bequeathed to his sister, Mrs. Willie A. Land, mother of these litigants, all of his property of every •nature, kind, and description whatsoever. ■On July 24, 1933, this will was probated in Vicksburg, Mississippi, and Mrs. Land qualified as executrix.
 

 In a bank box standing in the name of ■the deceased there were discovered a large number of bonds, some cash, and documents, and Mrs. Land, as executrix, took possession of these bonds, documents, and cash. The bonds were taken out of the jurisdiction of the Chancery Court of Warren County, Mississippi,- which had the estate under administration, by John R. Land, Jr., one of the litigants herein, and were removed to the State of Louisiana. Upon reaching Monroe, Louisiana, with these bonds, Land was instructed by telephone to return the bonds to the jurisdiction of the court which had the estate under administration, and he did so the following day.
 

 Soon after the will of Amos A. Armistead was probated, Mrs. Mary Erminie Armistead Whitelaw, daughter of Armistead, instituted suit to annul the will on the ground that her father did not have the mental capacity to make the will. According to the testimony of John R. Land, Jr., it was concern over the contest to be made that caused the removal of the bonds from the jurisdiction of the Mississippi court.
 

 A few days later, the clerk of the chancery court, acting under an order of court, took into his possession and held, subject to the further orders of the court, the bonds and other property.
 

 Among the effects and documents of Armistead, the deceased, of which the executrix had possession, there was found a document bearing the signature of A. A. Armistead, in which he made a gift or donation to his sister, Mrs. Land, of all the bonds in question. This document, although undated, showed from its own language that it was written subsequent to the date of his will, for it contained the statement that “This writing shall in no wise affect or interfere with the provisions
 
 *61
 
 of niy Last Will and Testament written wholly in my own handwriting, and inscribed by me, on the second (2nd) day of January, 1925 * *
 

 Since Mrs. Land was a citizen of Louisiana and Mrs. Whitelaw a citizen of Mississippi, Mrs. Land, under the diversity of citizenship clause, obtained from the United States District Court for the Western Division of the Southern District of Mississippi a writ of replevin, and under this writ the bonds were seized by the United States marshal.
 

 After the bonds had been seized by the United States marshal, Mrs. Whitelaw, who was contesting the last will and testament of her father, and Mrs. Willie A. Land, through their attorneys, effected a compromise, according to the terms of which Mrs. Land sold and conveyed to Mrs. Whitelaw a one-fourth interest in all the real estate, personal property, cash, stocks, and bonds owned by Armistead at the time of his death. This compromise was in the form of a written document, signed by both Mrs. Land and Mrs. Whitelaw, and recited that the bonds in question were at that time in the hands of the United States marshal under a writ of replevin. This agreement was signed on September 23, and the signatures of both parties were acknowledged by them before a notary on September 25.
 

 By decree of the Chancery Court of Warren County, Mississippi, dated September 25, 1933, Mrs. Land was decreed to be the owner of all the bonds under and by virtue of the gift or donation, therein described, made to her by her brother, A. A. Armistead, during the month of December, 1928. There was also a decree on this same date upon the issue raised by Mrs. White-law of whether the deceased had sufficient mental capacity to make a will and whether it was made freely and voluntarily by him and without undue influence. This question was submited to a jury, who returned a verdict in Mrs. Land’s favor, whereupon the court entered an order adjudging and decreeing that the document was the true and genuine last will and testament of Amos A. Armistead, and that it be recorded as such.
 

 Thereafter, on July 14, 1934, that court by decree recognized Mrs. Land as the sole' and only heir at law under the last will and testament of Armistead, and the sole' and only person interested in his estate,, and fixed the value of the estate at somewhat less than $50,000 (the bonds having previously been recognized by the court as. the property of Mrs. Land), and discharged Mrs. Land as executrix.
 

 Since the compromise agreement between. Mrs. Land and Mrs. Whitelaw resulted in the latter’s abandoning her attack on Armistead’s last will and testament, the decrees of September 25, 1933, and July 14, 1934, were in the nature of consent decrees.
 

 Amos A. Armistead left a large estate, from which Mrs. Land received Mississippi state and county bonds having a value of $180,000, and cash, real estate, etc., of
 
 *62
 
 the appraised value of $33,000, or a total of $213,000.
 

 Following the compromise agreement, two of the attorneys representing Mrs. Land brought the bonds which she had received from the Armistead estate to New Orleans on September 27, 1933, and delivered them to her at the Whitney National Bank. They were deposited with that institution in a private bank box rented by Mrs. Land in her own name on or about the same date.
 

 John R. Land, Sr., was never a party to any of the proceedings in the Mississippi court, nor did he during this time ever claim the ownership of, or an interest in, th.e property acquired by his wife from her brother’s estate. The will itself stated that the testator bequeathed all of his property to his sister, Mrs. Willie A. Land, with no mention therein of John R. Land, Sr., and the act evidencing the gift of these bonds provided that they were to be the exclusive property of the donor’s sister and likewise made no mention of her husband.
 

 Under the plain provisions of Article 2334 of the Civil Code, property received by inheritance or donation is the separate property of the spouse so acquiring it, and, although the bonds were actually delivered to Mrs. Land as a result of a compromise agreement, growing out of litigation in which she was asserting her right of inheritance or to a donation of these particular bonds, this fact could not, of itself, change the status of this property so as to make it property belonging to the community which existed between John R. Land, Sr., and Mrs. Willie Land. The act of compromise was the means by which actual delivery of the bonds was authorized and made; but, after Mrs. Land had conveyed a one-fourth interest to Mrs. Whitelaw by the compromise agreement, the remaining three-fourths interest in the bonds was her separate property, for it was under the will itself or the act of gift that Mrs. Land was asserting her claim to the Armistead estate.
 

 John R. Land, Jr., contended that the gift of these bonds, as evidenced by the act of gift, was not valid for the reason that the act itself was invalid both under the laws of Mississippi and under the laws of this state, and also that the decrees of the chancery court of Mississippi were not properly proven.
 

 The testimony of the attorneys who appeared in the Mississippi litigation was offered in this case, and a consideration of this testimony, together with the various documents introduced in connection therewith, established to our satisfaction the authenticity of the decrees of the Mississippi court. We know of no reason why we should not give full faith and credit to these decrees which recognized as valid the gift of certain bonds within the .jurisdiction of the Mississippi court and decreed the last will and testament of Amos A. Armistead
 
 *63
 
 to be his true and genuine last will and testament. West Feliciana Railroad Co. v. Thornton, 12 La.Ann. 736, 68 Ann.Dec. 778. In re Interdiction of Parker, 39 La. Ann. 333, 1 So. 891; Long v. M. C. Peters Mill Co., 157 La. 283, 102 So. 402.
 

 Mrs. Land did not purchase these bonds from Armistead nor were they donated by him to her and her husband jointly. They therefore were not community property under the articles of the Civil Code which define community property.
 

 We now come to the question of whether these bonds were administered by Mrs. Land separately and without the assistance of her husband.
 

 At the time the bonds were delivered to Mrs. Land at the Whitney National Bank in New Orleans, John R. Land, Sr., her husband, had a bank box in the Hibernia Bank & Trust Company (subsequently Hibernia National Bank). Notwithstanding this fact, Mrs. Land rented a bank box in her own name at the Whitney National Bank and placed these bonds therein. From this time until her death on February 23, 1945, no one but Mrs. Land herself ever gained entrance to this box. She visited this box from time to time, clipped coupons from the bonds placed therein, and removed, bonds therefrom for the purpose of sale or for the purpose of collection when they matured. This safety deposit box was under her sole and exclusive control, and her husband had no authority to enter, nor did he ever enter, this particular bank box.
 

 The bonds left by Mrs. Land and found in her safety deposit box in the Whitney National Bank were in 36 different envelopes, apparently provided by the bank for that purpose. On the back of these envelopes the various bonds contained therein were described, and on the back of each envelope (with one exception) the ownership of the bonds contained therein was declared to be in Mrs. Willie A. Land in the proven handwriting of Mrs. Land, John R. Land, Jr., or Mrs. Triplett. It is significant to us that on none of these envelopes do we find any declaration or statement made in the handwriting of John R. Land, Sr. This indicates that John R. Land, Sr., never performed any act in connection with these bonds or assisted Mrs. Land in handling them, and shows conclusively that Mrs. Land considered these bonds to be her individual property.
 

 The one exception mentioned above was an envelope containing three bonds on which we find in the handwriting of Mrs. Land the declaration that the bonds were the property of Mrs. Triplett, and these bonds were claimed by Mrs. Triplett as her individual property, which claim we shall discuss later herein.
 

 Mrs. Land had a checking account in the Whitney National Bank in her own name, which has been designated in these proceedings as her commercial account. The money deposited)to the credit of this
 
 *64
 
 account was received by Mrs. Land almost exclusively as interest from bonds acquired from the Armistead estate, proceeds of sales of such bonds, income from bonds purchased with the proceeds of sales of the original bonds, and money from the sale of other assets acquired by her from the estate of her brother, all of which were her separate property.
 

 All checks on this account were drawn by Mrs. Land or her agent, John R. Land, Jr. John R. Land, Sr., never drew any check against this account, nor did he have any authority to do so, and he exercised no control over these funds whatsoever. The funds in this account were under the sole control of Mrs. Land individually or through her son, John R. Land, Jr., her designated agent.
 

 During John R. Land, Sr.’s lifetime he himself had in the same bank a checking account in which he deposited his salary warrants, royalty checks, etc. The record does not show that John R. Land, Sr., ever made a single deposit to Mrs. Land’s commercial account.
 

 From these facts we conclude that Mrs. Land’s commercial account was her separate property and was under her exclusive control and management.
 

 John R. Land, Jr., had a general power of attorney to act for his mother granted by her in 1934, and also authority or power of attorney to write checks on her commercial account. Under these powers of attorney John R. Land, Jr., could have bought, sold, or exchanged bonds belonging to his mother and deposited the proceeds of any such bonds in her commercial checking account. However, Mrs. Land terminated these powers of attorney in 1941.
 

 After the death of John R. Land, Sr., in 1941, his succession was opened in Cad-do Parish. In due course judgment was rendered in those proceedings recognizing John R. Land, Jr., and Elizabeth Land as heirs of their father, and Mrs. Willie A. Land as surviving spouse in community entitled to one-half of the community which had existed between her and John R. Land, Sr.
 

 There was filed in those proceedings an affidavit signed by John R. Land, Jr., and his mother and sister, giving a detailed descriptive list of all the property composing the decedent’s estate, showing the actual cash value of each item as of the date of John R. Land, Sr.’s death. Notwithstanding the fact that John R..Land, Jr., was present on numerous instances during the litigation in Mississippi with reference to the Armistead estate, and notwithstanding the fact that he had had a power of attorney from his mother, as hereinabove set out, and that all the facts relative to the acquisition and administration of the bonds must have been known to him, no mention of the bonds which he now claims to be community property was made in the succession proceedings of his father, nor were they described therein in any way.
 
 *65
 
 John R. Land, Jr., gave an explanation for his failure to include this property in his father’s succession as belonging to the community, but this explanation is not very •convincing.
 

 The Inventories
 

 The items in controversy are designated, numbered, and appraised on the inventories as follows:
 

 State and political subdivision bonds of the States of Louisiana and Mississippi, Items Nos. 1 through 43, 68, and 69, appraised at $204,159.26
 

 Shares of stock in Tennessee bank, Item No. 44, appraised at 4.300.00
 

 United States War Bonds or treasury certificates, Item No. 45, appraised at 547.12
 

 Savings account in National American Bank of New Orleans, as per savings pass book No. 78038, Item No. 46, showing balance of 3,012.51
 

 Savings account in Whitney National Bank of New Orleans, as per savings pass book No. 110892, Item No. 47, showing balance of 4,806.47
 

 Checking account, Whitney National Bank, Item No. 48, showing balance of 1.675.01
 

 Jewelry consisting of one diamond ring, one wrist watch, and one wedding ring, no item number, appraised at 1,005.00
 

 One Cadillac automobile, no item number, appraised at $2,000.00
 

 There are numerous other items on the inventories, but, since there is no controversy as to these, it would serve no useful purpose to set them out or discuss them.
 

 Bonds Listed on the Inventories
 

 Items Nos. 1 through 8, inclusive, are the remaining original bonds acquired by Mrs. Land from the estate of Amos A. Armistead, and, as we have heretofore pointed out, were the separate property of Mrs. Land.
 

 Forty-one bonds are listed as Items Nos. 11, 12, 13, and 40 on the inventories. Twenty-one of these bonds were acquired by means of exchange for bonds received by Mrs. Land from the Armistead estate. Twenty were acquired by exchange of Louisiana bonds for which some of the original bonds had been exchanged. For these reasons these bonds were the separate property of Mrs. Land.
 

 Item No. 40 is comprised of parts designated (a) through (e). The judgment of the lower court failed to list Item No. 40(e) as the separate property of Mrs. Land. We believe this was merely an oversight or a clerical error, and the judgment will be amended to include this item in the list of Mrs. Land’s separate property.
 

 Items Nos. 9, 10; 14 through 39, both inclusive; 41, 42, 43, 68, and 69 are bonds purchased by John R. Land, Jr.,
 
 *66
 
 or by Mrs. Land individually from various brokers in the City of New Orleans, and all were ultimately paid for by check drawn on Mrs. Land’s commercial account. As we have pointed out, this commercial account was the separate property of Mrs. Land, and, the bonds having been paid for by funds from this account, they were Mrs. Land’s separate property.
 

 John R. Land, Jr., contended that these bonds were community property for the reason that they were paid for by checks drawn on Mrs. Land’s commercial account, and that this account was community in its nature for the reason that there were deposited in this account funds belonging to the community so as to constitute a commingling of funds belonging to each estate.
 

 It is true that one salary warrant of John R. Land, Sr., was deposited in this account by Mrs. Land during his last illness to take care of expenses incurred during this illness, and, further, that checks to Mrs. Land for several months as salary for acting as her husband’s secretary and her earnings as a Christian Science practitioner were deposited in this account.
 

 The executrix of Mrs. Land’s succession estimated that over $250,000 were deposited in this account from 1933 to the date of the death of John R. Land, Sr., in April, 1941, a period of approximately eight years, and this is not shown to be untrue by any evidence in the record in this case. The deposits of the husband’s salary warrant and of Mrs. Land’s own earnings, when considered with reference to the total funds deposited in this account, are inconsequential and would not, in our opinion, be a sufficient commingling of community funds to warrant the designation of this checking account as community property.
 

 It is true that John R. Land, Jr., asserted in his testimony that he was not reimbursed by his mother for one of the bonds purchased by him. Whether this be true or not, it in no way changed the status of this particular bond as her separate property, and the correctness of his claim is not before us in these proceedings.
 

 Items Nos. 34 and 40(d) on the inventories consist of two $1,000 bonds for the Parish of Rapides, series of 1935, and one $500 bond of the State of Louisiana, Port Commission Harbor Improvement, 5 per cent gold, bearing No. A-1567.
 

 Mrs. Triplett claimed these bonds because on the envelope which contained them, found in the safety deposit box of Mrs. Willie A. Land in the Whitney National Bank, there appeared in the handwriting of Mrs. Land the following: “2,500.00 Bonds of the Property of Elizabeth Land Triplett, 2429 Octavia Street, New Orleans, Louisiana, Gift, 1943, Property of Elizabeth Land Triplett by Mrs. Willie A. Land.”
 

 Under the provisions of Article 1536 of the Civil Code, donations inter vivos of im
 
 *67
 
 movable or incorporeal things
 
 must
 
 be passed before a notary public and two witnesses. Since the provisions of this article were not complied with here, we do not think that the mere statement found on the back of the envelope containing these bonds would be sufficient to support Mrs. Triplett’s claim to their ownership. The trial judge so ruled, and we think his ruling was correct.
 

 Counsel for Mrs. Triplett made the statement that these provisions of the Civil Code have been repealed by the Uniform Stock Transfer Act, Act No. 180 of 1910, Dart’s Louisiana Statutes, Section 1180 et seq., but this statement was not supported by argument or authorities. These items are negotiable interest-bearing coupon bonds and are not shares of stock. In our opinion the Uniform Stock Transfer Act has no application, and there is no merit in counsel’s statement.
 

 From the lengthy record in this case, we have made an effort to analyze the various transactions with reference to all of these bonds, and in doing so have determined as to each item the manner and method by which Mrs. Land acquired it. We believe our analysis to be correct, but, if not, there is no doubt whatsoever that these bonds listed on the inventories were acquired by Mrs. Land from the estate of Amos A. Armistead, by exchange, or by purchase with funds from her commercial account, and all of these bonds belonged to her separate estate.
 

 Items Nos. 68 and 69, like Item No. 40 (e), were omitted from the list of bonds which the lower court decreed in its judgment to be the separate property of Mrs. Land. We think this was done through oversight or error, and we will accordingly amend the judgment as to these items.
 

 Bank Stock.
 

 Item No. 44 is a stock certificate bearing No. 9439 for 200 shares of common stock of the Park National Bank of Knoxville, Tennessee, standing in the name of Mrs. Willie A. Land, dated December 19, 1941, appraised at $4300.
 

 This stock was paid for with separate funds of Mrs. Land. In addition to this, it was acquired by Mrs. Land after the death of John R. Land Sr. The lower court found this stock to be the separate property of Mrs. Land, and this finding is correct.
 

 United States War Savings Bonds.
 

 Item No. 45 consists of 11 United States War Savings Bonds, appraised at $547.12, which were purchased by Mrs. Land subsequent to the death of her husband. These bonds were made out or issued to Mrs. Willie A. Land or Mrs. Elizabeth Land Triplett. Mrs. Triplett claimed these bonds as her individual property under the regulations governing United States War Savings Bonds, which provide that a War Savings Bond, issued in the name of two persons as co-owners, such as John)
 
 *68
 
 A. Jones or Mrs. Mary C. Jones, will be paid or reissued after the death of one of the co-owners to the surviving co-owner, who will be recognized as the sole and absolute owner of the bond.
 

 The district court gave full force and effect to the laws and regulations governing United States War Savings Bonds, and recognized Mrs. Triplett as the owner of these bonds, but reserved the right of John R. Land, Jr., to claim his full legitime and to claim collations because of these gifts. We find no error in this ruling.
 

 Bank Accounts.
 

 Item No. 46 on the inventories is the amount on deposit to the credit of the decedent, Mrs. Land, in the National American Bank of New Orleans, as per savings pass book No. 78038, showing a balance of $3,012.52.
 

 The executrix in her analysis of this bank account, filed in- the lower court, showed that this account was opened by Mrs. Land after the death of her husband, and that the greater portion of the amount deposited therein represented the proceeds of the sale of property in Mississippi.
 

 John R. Land, Jr., in brief filed in this court conceded that the funds in this account were acquired after the death of his father, but contended that these funds were acquired by the sale of community property.
 

 These funds, having been acquired after the dissolution of the community, were the separate property of Mrs. Land, as decreed by the lower court, in the absence of any proof that they were the proceeds from the sale of community property. We find no such proof in the record.
 

 Item No. 47 on the inventories is the amount on deposit to the credit of Mrs. Willie A. Land in the Whitney National Bank of New Orleans, as per savings pass book No. 110892, showing a balance of $4,806.47.
 

 From the date of the dissolution of the community by the death of John R. Land, Sr., to the time of Mrs. Land’s death, there was deposited in this account a sum sufficient to equal or exceed the balance contained therein as of the date of Mrs. Land’s death, as shown on the inventories. The lower court found this bank balance to be separate property of Mrs. Land. The testimony disclosed that, prior to John R. Land, Sr.’s death, both he and his wife made deposits in this savings account, and that on the date of his death there was on deposit the sum of $5,457.95. The lower ■ court reserved the rights, if any, of both John R. Land, Jr., and Mrs. Triplett to make claim to the extent of one-fourth each of the balance in this account as of the date of John R. Land, Sr.’s death. We find no error in this ruling.
 

 Item No. 48 on the inventories is the amount on deposit in the commercial account to the credit of Mrs. Land in the
 
 *69
 
 Whitney National Bank of New Orleans, showing a balance of $1,675.01. We have heretofore discussed this account at length and found it to be her separate property.
 

 Jewelry.
 

 Mrs. Triplett contended that certain jewelry, listed on the inventory, consisting of a diamond ring in a diamond-platinum setting, one wrist watch, and one wedding ring, were her individual property as a manual gift from the deceased.
 

 The lower court dismissed her claim as to these items, and we think correctly so. Although Article 1539 of the Civil Code provides that the manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality, the testimony disclosed that there was never any real delivery to Mrs. Triplett of any of these items, and that they were not in her custody or possession pn the date of Mrs. Land’s death.
 

 Automobile.
 

 This automobile bears no item number on the inventories, but is listed as one Cadillac automobile appraised at $2,000. This automobile was purchased on December 26, 1940, during the lifetime of John R. Land, Sr., in the name of Mrs. Willie A. Land.
 

 We find by exhibits in the record and the testimony that a major part of the purchase price of this automobile was paid by cash withdrawn from the savings account standing in the name of Mrs. Willie A. Land in the Whitney National Bank. The funds in this account prior to John R. Land, Sr.’s death belonged to the community, as both Mrs. Land and her husband made deposits therein. Since the evidence shows that the automobile was purchased during the existence of the community and that the major portion of the purchase price was paid with community funds, we do not think that the presumption that it was community property has been overcome.
 

 John R. Land, Jr., contended that during the trial in the lower court considerable parol evidence was admitted, largely hearsay or self-serving declarations purporting to have been made by parties deceased. This contention presents little or nothing for review. Even if we concede that the evidence of which he complained was improperly adduced and should not be considered or given any weight, in our opinion there is sufficient competent evidence in the record to enable us to reach the conclusion to which we have come, and all the evidence to which he objected could be disregarded entirely, and yet the same result would be reached in this decision.
 

 With reference to Land’s pleas of estoppel based on income tax returns of his mother and father made for the years 1939 and 1940, the testimony disclosed that these income tax returns were prepared by
 
 *70
 
 John R. Land, Jr., himself. The declarations contained therein were made for the purpose of computing the income tax due the United States government, and the correctness or incorrectness of such statements is a matter between the government and the taxpayer. The most that can be said for the statements contained in these returns is that they may have some evidentiary value as to whether the bonds mentioned therein were community or separate property. But, if so considered, these statements cannot outweigh or prevail over the positive proof adduced by Mrs. Triplett in this record that the bonds in question were the separate property of Mrs. Willie A. Land. Betz v. Riviere (Riviere v. Riviere), 211 La. 43, 29 So.2d 465.
 

 John R. Land, Jr., further contended that Mrs. Triplett was estopped from denying that certain bonds listed on the inventories belonged to the succession of her father by reason of certain letters written to him by his mother, and Mrs. Triplett contended that Land was estopped from claiming the property listed on the inventories as community property by reason of certain judicial admissions made by him in the succession of his father.
 

 Since neither of these litigants relied or acted, to his prejudice, on the declarations which were urged by them as the bases of their pleas of estoppel, the lower court properly overruled these pleas.
 

 There is no merit in the exception to the jurisdiction of the Civil District Court for the Parish of Orleans, filed by John R. Land, Jr. That court had jurisdiction over this succession proceeding, as Mrs. Land was domiciled in, and was a resident of, the Parish of Orleans, and the principal effects of her succession, described in the inventories, were within the jurisdiction of that court.
 

 The judgment of the lower court assessed the costs against the estate of Mrs. Willie A. Land. Mrs. Triplett urged that we amend the judgment so as to assess the costs against John R. Land, Jr., personally. She gave no reason why we should do so, and under these circumstances we do not think we should disturb the judgment in this respect.
 

 For the reasons assigned, the judgment of the lower court is amended so as to decree Items Nos. 40(e), 68, and 69 in the inventories to be the separate property of Mrs. Willie A. Land; in all other respects the judgment is affirmed. All costs of these proceedings are to be borne by the Succession of Mrs. Willie A. Land.