HAMITER, Justice.
 

 Mrs. Vivian P. Hemenway, surviving widow in community of Warren J. Hemenway, Sr. (referred to hereinafter often as decedent), is appealing from a judgment which decreed, among other things, that some of the property of which decedent died possessed belonged to the community and the remainder thereof to his separate estate. In a “Specification of Alleged Errors” she complains that the district court erred in allocating to decedent’s separate estate the following items:
 

 1.The sum of $7,578.02 in the possession or under the control of Mrs. Hemenway.
 

 2. All of the stocks and bonds appearing as Items 1 to 29 (both inclusive) on pages 1, 2, 3 and 4 of the original inventory and valued in the sum of $29,112.79.
 

 3. A receipt from Waters &.Alcus, dated April 9, 1952, representing 50 shares of American Basic Fixed Trust Shares, appearing on page 8 of the original inventory and valued at $787.50.
 

 4. The entire immovable property described on pages 8 and 9 of the Original inventory, valued at $13,500.
 

 Answering the appeal Mrs. Beverly Hemenway Gumpert and Mrs. Madge Hemenway McRae, who are children of the decedent and his surviving widow, request that the judgment be amended by appointing Mrs. Gumpert administratrix of the succession, in the place of Mrs. Hemenway whom the court confirmed as testamentary executrix; by decreeing the community to be indebted unto decedent’s separate estate to the extent that separate funds inured to the benefit of the community; and by ordering the surviving widow to account for all funds and other property of the succession.
 

 A curator ad hoc, appointed to represent Mrs. Gloria Hemenway"Kfe'ése who is an' absentee, also answered the appeal, ' he asking recognition of the claim of the separate estate for reimbursement of separate funds expended for the benefit of the community.
 

 After briefly relating the background of this litigation and announcing the princi
 
 *579
 
 pies of law applicable here we shall consider the above mentioned several complaints and requests in the order listed.
 

 Warren J. Hemenway, Sr., died at his domicile in the City of New Orleans on May 4, 1952, leaving a last will and testament in olographic form and being survived by his widow, Mrs. Vivian P. Hemenway (to whom he was married in 1919), and by four children (all majors), three of whom are named above and the fourth is Warren J. Hemenway, Jr. Decedent, in the will, bequeathed all of his property to his widow, and he appointed her executrix of the estate. On May 29, 1952 the court ordered that the will be probated, that an inventory be taken, and that the widow be confirmed as testamentary executrix upon her furnishing the necessary security and taking the required oath.
 

 Following the taking and recording of the inventory, in which the notary attempted to separate the succession effects and to list them as either community or separate property, the widow filed a petition challenging its correctness.
 

 Several months later Mrs. Beverly Hemenway Gumpert, a daughter as aforestated, attacked the will as being defective as to form and containing a fidei commissum. In her petition she prayed for judgment declaring the succession intestate or, alternatively, recognizing the children as forced heirs, entitled to their legitime, and reducing the disposition of said will accordingly. Further, Mrs. Gumpert prayed, among other things, that she be appointed administratrix of the succession and that decedent’s property be declared either separate or community in accordance with the listings in the inventory.
 

 Although cited in connection with both petitions, Mrs. McRae and Warren J. Hemenway, Jr. (two of the children) made no appearances in the district court. Mrs. Gloria Hemenway Keese, the remaining child and an absentee, was cited through a curator ad hoc (as before shown) who has actively contested the widow’s demands, both in the district court and here, notwithstanding Mrs. Keese’s letter to him regarding the litigation in which she said: “* * * I have no wish to take part in this affair over my father’s estate.
 

 “You asked me to advise my position in this matter, and I am advising that I am taking no sides whatsoever. I feel that this is between my mother and my sister, Mrs. Beverly Gumpert, and wish to remain
 
 strictly
 
 out of it.”
 

 Before trial, by a stipulation of counsel, it was agreed with respect to decedent’s will that: (1) It is valid as to form, (2) the legacy to the widow shall be reduced to the disposable portion and (3) any fidei commissum found therein shall be considered as not written.
 

 As a result of this agreement there principally remained for determination issues respecting the status or character of decedent’s property (whether community or separate), the importance of which is that the childrens’ interests will be greater and
 
 *581
 
 the widow’s share less if separate, and vice versa if community. And, after a lengthy hearing, such issues were resolved by the judgment from which this' appeal was taken.
 

 Property acquired by either the husband or wife during the existence' of the community of acquets and gains is presumed to belong to the community. Anyone claiming and alleging that it does not so belong must prove his claim clearly and with legal certainty. LSA-C.C. Articles 2402 and 2405; Succession of Manning, 150 La. 1008, 91 So. 435; Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8; Succession of Land, 212 La. 103, 31 So.2d 609; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; and Succession of Schnitter, 220 La. 323, 56 So.2d 563.
 

 Here, it is admitted that everything possessed by Warren J. Hemenway, Sr., at' the time of his death had been acquired while he was living in community with his surviving wife. Hence, to overcome the presumption that all succession effects belonged to the community, appellees carry the burden of preponderated showing that the assets which they assert to be separate property were obtained by decedent through inheritance, gifts, or purchases with separate funds.
 

 Referring now to the above mentioned sum of $7,578.02 in the possession or under the control of Mrs. Hemenway, concluded by the district court to be separate property and about which appellant complains, she ■ acquired such funds from the checking account of decedent in the Hibernia National Bank of New Orleans several days before his death (it represented the entire balance thereof). The widow withdrew this money under a written power of attorney executed by her husband in the presence of Mrs. Gumpert, Mrs. McRae, Mrs. Warren Hemenway, Jr., and Irwin W. Rosenthal (decedent’s attorney), all of whom signed as witnesses.
 

 This checking account had been opened by decedent on July 27, 1946, and until immediately prior to his death numerous deposits therein and withdrawals therefrom were made. During that entire period of almost six years he was employed by. the New Orleans Public Service Company, receiving salaries averaging approximately $3,500 per annum. From the record it appears that he and his wife enjoyed what may be described as a comfortable living; that is, they were neither rich nor poor.
 

 Among the sizeable deposits made in decedent’s bank account were the following: $5,000 on the opening of the account; $700 on August 10, 1946; $3,482.54 and $2,960.34 on March 1, 1947; and $22,140.33 on September 28, 1947. It is the contention of Mrs. Gumpert that these sums were from the succession of the father of Mr. Hemenway (John E. Hemenway) and, hence, the bank account belonged entirely to decedent’s separate estate, the other deposits therein having been so inconsequential as not to change the account’s status.
 

 
 *583
 
 The father died May 13, 1946 leaving the said Warren Hemenway, Sr., and another son, Edward, as his sole heirs. The succession proceedings, made a part of the present record, were commenced May 24, 1946; and therein his gross estate was inventoried at approximately $123,000, consisting principally of stocks and bonds, some real estate, an interest in a construction business operated as a partnership by the father and Edward, and $2,199.60 in cash. On July 11, 1946, pursuant to a petition, the court authorized Edward and Warren to continue operating the construction business.
 

 Some nine months later, specifically on March 4, 1947, the two sons were recognized as sole heirs at law of their father and, as such, were sent into possession of his entire estate. Shortly thereafter, they proceeded to and did divide the succession effects, except the real estate and the father’s interest in the construction business. As to these excepted items a deed of date September 29, 1947 evidenced a sale and transfer from Warren to Edward of all of his right to the construction business and his interest in two parcels of the real estate for a total consideration of $25,-640.33, cash. On the same date, by another instrument, Edward conveyed to Warren his undivided one-half interest,, in. the remaining real estate for a recited cash consideration of $3,500.
 

 Preliminarily to, and as a basis for, the first described transfer Edward prepared and submitted to decedent a written “Statement of Offer” in which he proposed to make the purchase for a net price of $22,-140.33. At the conclusion thereof it provided : “ * * * This offer is made for amicable settlement only, without evidential value, and with knowledge by offeror that it far exceeds the legal share of the offeree.” In this statement Edward had valued the business and equipment, including certain storage lots; had set forth the profits Warren would be entitled to from pending construction; and had listed the equalization difference between the respective parcels of real estate they would receive. The gross total offer was $30,-301.05. From this were deducted certain credits representing assets received by Warren totaling $8,160.72 which embraced, in addition to a small loan and a one-half interest in an automobile, proceeds already drawn by him in two amounts of $3,633.91 and $3,557.04 — this leaving the net offer of $22,140.33.
 

 Attached to such statement, but obviously of no relevancy to the offer, was a single sheet headed “Statement of Prior Account Drawn”. This disclosed that in what is described as the “Hibernia Business Account” there was on deposit as of December 20, 1946, the sum of $28,053.05. It also shows, without any notation of dates, that the entire amount had been withdrawn, Edward and Warren each having received therefrom the respective sums of $5,000 and
 
 *585
 
 $3,284.40. The rest was paid out in settle-, ment of succession fees, charges, etc.
 

 Although the “Statement of Prior Ac-' count Drawn” discloses the source of $7,332.55 of the deposited funds (the greater" part of this was profit from a construction job received several months after the father’s death) there is no showing as to where the rest ($20,720.50) came from. The father, according to the inventory-taken in his succession, died possessed of only $2,199.60 in cash, and of this the two sons were sent into possession a year later. Furthermore, there was never any sale of succession property. Nor did the business have any great amount of cash, Edward having testified that “the cash assets were all in my father’s name.” It might well be that the $20,720.50 represented contributions from the sons placed in the account to pay succession charges, fees, etc. (Edward testified that he and his brother used private funds in paying expenses of last illness), or cash dividends on the father’s stocks to which the sons succeeded, or profits from the construction business, or proceeds from insurance left by the father, or a combination of some or all of these.
 

 To prove the separate character' of decedent’s bank account, Mrs. Gumpert relies almost exclusively on the “Statement of Prior- Account Drawn”, and on the “Statement of Offer”. (No witnesses could testify with any certainty as to the source of any of the large deposits made in decedent’s account.) However, it is to be noted that only two amounts listed on those statements correspond with deposits made in decedent’s bank account, they being the $5,000 and the $22,140.33 items. Of course, in view of such sameness, it might well be surmised that those two deposits resulted from the father’s succession and the dealings between decedent and his brother. But it does not necessarily follow that decedent inherited the full combined amounts, for it clearly appears that a large portion thereof was from profits of the business realized after the father’s death and while the sons were operating it.
 

 Be that as it may the other deposits made in decedent’s account from time to time throughout its existence of some six years, which totaled the substantial sum of $8,500, were concededly community funds. This being true our decision in Succession of Land, supra, cited and relied on heavily by Mrs. Gumpert, cannot be applicable here. In that case no community funds had been deposited in the wife’s bank account of admittedly separate funds (it had existed for about eight years and the deposits had totaled more than $250,000) until, the husband’s last illness, at which time a salary check of the husband and some earnings of the wife were placed therein. The court held that the community income thus put into the account was so inconsequential as not to constitute a sufficient commingling of community and separate funds and warrant the designation of the account as community property.
 

 
 *587
 
 More appropriate is the case of Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478, 482. The husband therein, prior and immediately subsequent to his marriage, had a bank account containing a balance of $7,000. During the existence of the community substantial portions of his earnings were deposited in it, and on his death there remained $4,971. In decreeing the remaining funds to be community property the court said that “ * * * there was a commingling of monies and it would be utterly impossible to determine what part of the balance now remaining in the savings account is attributable to the separate estate.”
 

 A similar situation exists in the instant case. Therefore, the balance of $7,578.02 contained in decedent’s bank account, which was withdrawn and now is under the control of Mrs. Hemenway, must be held to be a community asset.
 

 The surviving widow insists, and she attempted to prove, that the husband had given her these funds in reimbursement of certain separate property which she had lent to him. But the proof offered is insufficient to warrant a holding that they belong to her separately.
 

 Appellant’s second complaint relates to stocks and bonds of which her husband died possessed. As is disclosed by the record, some are traceable directly from the father to the decedent by inheritance and, hence, are assets of the latter’s separate estate. LSA-C.C. Article 2334. These are listed on the original inventory as Items: (1), (4), (6), (7), (12), (13), (16), (17), (19), (23), and (26).
 

 Some of the stock which decedent inherited from his father appears to have been split, two shares for one, in which case the resulting shares are his separate property. These are Items (9), and (27), and twenty-two shares of Item (20).
 

 Some shares were acquired as dividends from the father’s stock and, therefore, belonged to decedent’s separate estate. See Daigre v. Daigre, No. 42,027 of the docket of this Court. These are Items (8) and (18).
 

 Some shares were purchased by decedent wholly with funds received from the sale of separately owned stocks (which had been inherited from his father) and, hence, were separate property. LSA-C.C. Article 2334; Succession of Land, supra; Bruyninckx v. Woodward, supra. These are: Items (5), (15), (22) and (28).
 

 Item (14) is also separate property, being shares issued, in lieu of other shares which had been inherited, as the result of a reorganization of the company. Kittredge v. Grau, 158 La. 154, 103 So. 723.
 

 Decedent purchased stocks with checks drawn solely on the community bank account and, as a consequence, the shares belong to the community. These are Items (10), (21) and (29).
 

 
 *589
 
 Some shares were purchased partly with separate funds and partly with community funds which came from the community bank account or from the sale of stocks which are presumed to be community since their origin does not otherwise appear or both, the community funds making up a substantial part of the purchase price. They, accordingly, are community assets, although the community estate is indebted to the separate estate for the amount of separate funds so used in making the purchases. Reine v. Reine, 170 La. 839, 129 So. 364; Succession of Schnitter, supra. These shares are Items (2), (3), (11), (24), (25), and thirteen shares of Item (20).
 

 Appellant further complains of the trial court’s having decreed to be separate property of the decedent a receipt issued by Waters & Alcus (stock brokers) representing 50 shares of American Basic Fixed Trust stock. Mrs. Gumpert (an appellee), as to this item, merely states: “These shares were acquired by the deceased from the succession of his father as per the judgment therein dated March 4, 1947, and the receipt from the sale of these shares constitutes separate property.” But the record does not show that the decedent inherited 50 shares of this stock. The father’s estate contained only that quantity, and the testimony of Edward Hemenway is that all of the stock was divided in half. He was asked whether in any instance one of the sons received the entirety of a particular issue and his answer was in the negative. Moreover, there is no indication of any stock dividends or stock split with respect to those shares. Therefore, since the totals do not tally, and the date on which the shares were acquired does not appear so that they can be identified with the stock transfers which took place immediately after the heirs were put in possession, the entire discussed 50 shares, together with the receipt representing them, must be held to be community property.-
 

 Appellant’s fourth complaint relates to the status of an undivided one-half interest in and to a double house and lot located at 4135-4137 Ulloa Street in the City of New Orleans. Admittedly, this piece of property had been owned by John Hemenway and was inherited by the sons on his death. Therefore, a one-half interest therein was the separate property of the decedent. However, on September 29, 1947 Edward, by a notarial act, conveyed to the decedent his undivided one-half interest (that which is in dispute here), the deed reciting a cash consideration of $3,500 but failing to state that the vendee was acquiring with separate funds and for his separate estate.
 

 This court has repeatedly held that “acquisitions of real property in the name of the husband during the marriage creates a presumption in favor of the community, juris et de jure, unless there is contained in the deed the double declaration that the property is acquired with the separate funds of the husband and for his separate estate”; and that in the absence of such declaration
 
 *591
 
 he is precluded “from contending that the land does not belong to the community.” See Slaton v. King, 214 La. 89, 36 So.2d 648,649, and the numerous cases cited therein.
 

 Recognizing such principle of law appellees argue that they are entitled to show that although the deed recites a cash consideration there was really no sale; that the property was conveyed by one brother to the other in settlement of .their father’s estate; and, hence, that it is in reality separate .property. The same argument was rejected by this court in Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655. Therein, to demonstrate the similarity of the cases, the .court, said: “The Baronne street property was acquired during the marriage, and, while the deed recites that the price ($3,400) was paid in cash, it is undisputed that the property was acquired in settlement of the claimed interest of defendant husband in the estate of his deceased sister, Mrs. Lissetta Schoeffner, wife of Emile Passman.
 

 * * . *. * * *
 

 “In Kittredge v. Grau, 158 La. [154] 170, 103 So. 723, this court held that where a married man buys property in his name without a stipulation in the deed that it-is bought with his separate funds, the pre^ sumption in favor of the community. is •juris et de jure. * * *
 

 ■ • * * * * *
 

 “The situation might have been different ■in this case if the deed had recited the real and true consideration, for we held in the Kittredge Case, supra, that where separate real estate of husband or wife is given in exchange for other real estate, property received in exchange is separate property, though the deed does not state property was bought with separate funds.”
 

 Entirely in keeping with that holding is our decision in the more recent case of Lewis v. Clay, 221 La. 663, 60 So.2d 78. There we held that the husband having acquired property during the existence of the community by a deed reciting a cash consideration paid to the vendor (the husband’s mother), neither he nor she could offer evidence after the dissolution of the community to show that in reality the act was one -of donation and, hence, that the property belonged to his separate estate.
 

 For these reasons it must be concluded and decreed that the disputed one-half interest in the Ulloa Street property is a community asset.
 

 In connection with the above announced conclusions it is well to ’observé that wherever separate funds have ’béén used in the acquisition of an ’ asset’which, by operation of law, has the status of community property, the community is indebted to and must reimburse the 'separate estate to the extent that it has benefited. And, incidentally, claims for reimbursement have been made herein both by appellant and appellees. However, the district court did -not adjudicate on these cláinis, and we are unable to do so because of the indefiniteness
 
 *593
 
 and insufficiency of the evidence contained in the record relative to the extent of the community’s enhancement. ■ Therefore, for the purpose of determining such claims, as well as for permitting an accounting by the executrix to the heirs, the case will have to be remanded.
 

 With reference to the plea of Mrs. Gum-pert to be appointed administratrix of decedent’s estate (contained in her answer to this appeal), in the place and stead of Mrs. Hemenway who was named and confirmed as the testamentary executrix, it appears to be predicated on this factual situation: On May 1,. 1952, or three days prior to his death, decedent executed a power of attorney in favor of his wife for the purpose of withdrawing funds from his bank account in the Hibernia National Bank (that which is first discussed' above). As heretofore shown, this instrument was witnessed by the two- resident daughters, by a daughter in law, and by decedent’s attorney. The following, day Mrs. Hemenway withdrew all of the funds from the account which amounted to $7,578.02.
 

 On May 7, three days after her husband’s death, she deposited $7,178.02 in the same bank in an,account opened in the name, of Vivian Hemenway. (She explains the difference in amount (exactly $400) by saying that the remainder was used to pay hospital expenses of her husband and to live on.) On May 9, the entire funds were withdrawn and redeposited, still in the same bank, in an account opened in the name of Vivian Planas (her maiden name). This: account was closed out on June 13. In hep testimony she admitted that after the inventory of the household goods was taken-(about June 5) she was asked by the notary, if there was any other property in'her possession belonging to her husband or to the. community and that she had answered that she di.d not have anything else except some dividend checks and a small amount of cash.
 

 Mrs. Gumpert contends that the factual' situation just described evidences an intention on the part of Mrs. Hemenway to conceal assets of the estate and to-steal them, thereby making het unfit-to serve as testamentary executrix. We do not agree. 'Mrs. Hemenway explained- her answer to the; notary (that she did not have property of-' the decedent), stating to him that-the husband had told her to take the money in re-payment of that which he had previously-borrowed from her. In this connection she definitely established that she had inherited approximately $1,400 from her father. Further, she testified that she had accumulated several thousand dollars from cash gifts which the husband had made to her during the marriage. These sums, she insisted, belonged to her separately and had been borrowed by the husband; and he wanted to make reimbursement of them when he told her to take the cash in the bank. While Mrs. Hemenway may- not have proved this claim with such legal certainty as to warrant a court’s rendering judgment in her favor on it, her testimony
 
 *595
 
 impresses us as being straightforward and we believe that she was in good faith in thinking the money to be hers and that it was not taken with an intent to defraud. And certainly this belief appears justified when it is recalled that Mrs. Gumpert, the principal contestant herein, joined in the execution of the power of attorney which authorized a withdrawal of the funds.
 

 It is to be noticed also that the cards which she signed in opening both accounts in the Hibernia National Bank after her husband’s death contained the statement that she was “introduced” by virtue of being the “Widow of Warren-Hemenway”. If her purpose had been to conceal the money and to sever its connection with Hemenway she, seemingly, would not have proceeded to deposit it in the same bank in which the decedent’s account had always been kept, to identify herself as the widow of Warren Hemenway, and to make the accounts so readily identifiable in dollars and cents.
 

 Even in cases where there are two persons of equal right to be appointed administrator of an estate this court has said that great weight will be given to the discretion exercised by the trial judge in determining which one shall be designated after considering their fitness. Succession of Virgets, 182 La. 491, 162 So. 53, and Succession of Brown, 214 La. 377, 37 So.2d 842. And this rule should be especially applicable where the trial court, as here, has approved the executrix appointed by the decedent himself.
 

 Moreover, courts do not take lightly the directive of the testator as to who shall administer his estate, and will not substitute their judgment for his except on a very strong showing that they should do otherwise. See Succession of Serres, 135 La. 1005, 66 So. 342, and Succession of Rembert, 199 La. 743, 7 So.2d 40. While the reason for opposing the executor in the Serres case is different from the one urged here the language of that decision is very broad and pertinent. There it was said (and this was approved in the Rembert case) in a Syllabus by the Court: “The same law which confers upon a man the right to dispose of his property by last will also confers upon him the right to appoint an executor, with seisin of his estate and with authority to carry the will into effect, and leaves him, and not his heirs or legatees, or the courts, to determine the necessity or propriety of making the appointment ; hence his motive in making such appointment is not open to inquiry, and, unless there exists some reason, founded in law, for refusing so to do, the probate court, to which the will is presented, should confirm the appointment.”
 

 On the showing made by appellee, Mrs. Gumpert, we are not justified in substituting our judgment for that of the testator and of the trial court. Hence, we hold that there was no error in the confirmation of Mrs. Hemenway as testamentary executrix.
 

 
 *597
 
 For the reasons assigned'the judgment of. the district court is amended by declaring and decreeing the following items of property to belong to the community of acquets and gains formerly existing between decedent and his surviving widow, to-wit:
 

 1. The sum of $7,578.02 in the possession or under the control of Mrs. Vivian Planas Hemenway, which was withdrawn by her on May 2, 1952 from the account of- decedent, Warren J. Hemenway, Sr., with the Hibernia National Bank, referred to on page 2 of the supplemental
 
 inventory;
 

 2.
 
 The receipt of Waters & Alcus appearing on page 8 of the original inventory for the sum of $787.50;
 

 3. Those stocks and bonds, listed on pages 1-through 4 of the original inventory, which are designated as Items Nos.
 
 (2);
 
 (3>, (10), (11), (21), (24), (25), (29), and thirteen shares of Item No. (20) ;
 

 4. An undivided one-half interest in and to the immovable property known as Municipal Nos. 4135 and 4137 Ulloa Street in the City of New Orleans; and párticularly described bn pages 8 and 9 of the original inventory.
 

 In, all other respects the judgment is af- . firmed. It. is further ordered that the cause be remanded for additional proceedings consistent with the views hereinabove expressed and in accordance with law. All . costs are to be borne by-this succession.