CULPEPPER, Judge.
The plaintiffs, Forest Oil Corporation, et al., filed this concursus proceeding. They deposited in the Registry of the Court funds which have accrued to certain disputed royalty interests from the production of gas and condensate. Impleaded as defendants having conflicting claims to the money are: (1) Jacob H. Wood, Jr., who claims the funds and ownership of the royalty interest involved as the heir of his brother, Charles H. Wood, deceased. (2) Charles S. Snead, testamentary executor of the succession of Louise Varían Wood, deceased wife of Charles H. Wood. The district judge held that Jacob H. Wood, Jr., is the owner of *402 the royalty interests in dispute. Charles S. Snead, as executor, appealed.
The substantial issue is whether the property was the separate property of Charles H. Wood, inherited by him from his father, Jacob H. Wood, Sr., in which event Jacob H. Wood, Jr. is now the owner. Charles S. Snead, as executor, contends the property was acquired during the marriage between Charles H. Wood and Louise Varian Wood, and thus was owned by the community, one-half of which falls to the succession of Louise Varian Wood.
There is no dispute as to the facts. They are stipulated by the parties and shown by pertinent deeds and other documents which are filed in evidence. These facts show that on April 30, 1948 Jacob H. Wood, Sr., a resident of Los Angeles, California, was the owner of 1400 acres of land in Cameron Parish, which includes the property in dispute. On that date, he executed in Los Angeles a “Declaration Of Trust”, naming Hugh W. Darling and William R. Ehni as trustees. The purpose of the trust was to augment the incomes of the trustor’s three sons, Jacob H. Wood, Jr., John S. Wood, and Charles H. Wood, and also his former step-son, William R. Ehni, one of the trustees.
On the same date the “Declaration Of Trust” was executed, Jacob H. Wood, Sr. conveyed the property to the trustees, Hugh W. Darling and William R. Ehni. But on December 27, 1949 these two trustees executed a quitclaim of the property back to Jacob H. Wood, Sr. This quitclaim contains the following explanatory provision:
“This quitclaim and conveyance is made for the purpose of releasing unto Jacob H. Wood any right, title, or interest we acquired or might have acquired by that certain warranty deed dated April 30, 1948, filed for record in the Parish of Cameron, State of Louisiana, on June 1, 1948, under File No. 53861, and recorded in Book 69 of Conveyances, page 2, wherein Jacob H. Wood conveyed, or attempted to convey, unto us as trustees, the property above described, the consideration for which was as recited therein, the obligations, conditions and provisions undertaken by us as trustees in a certain Declaration of Trust dated April 30, 1948, which trust is now found to be invalid under the law of Louisiana, and of no force and effect as to real property situated in the state of Louisiana; this quitclaim being made in order to remove from the public records of the state of Louisiana the said warranty deed of April 30, 1948, described and recorded as aforesaid, so that the title to the herein described property will remain unaffected by and as though the said warranty deed had never been executed or recorded.”
Then on December 30, 1949, Jacob H. Wood, Sr. executed a sale of the property to Hugh W. Darling and William R. Ehni for a stated consideration of $8,000, represented by a promissory note, and other undisclosed considerations.
On April 24, 1951, Hugh W. Darling and William R. Ehni executed a “Certificate” to which they attached a copy of the original “Declaration Of Trust” of date, April 30, 1948. This certificate, with the attached trust agreement, was recorded in the records of Cameron Parish on March 31, 1961, and contains the following provisions :
“3. The real property described in recital ‘A’ of the Declaration of Trust stands of record in the names of William R. Ehni and Hugh W. Darling, without reference to the trust or any trust obligation, with their respective wives having relinquished any community or other interest in the real property.
“4. Notwithstanding the fact that the Declaration of Trust has not been recorded and that the real property described in recital ‘A’ stands in the names of the undersigned, in fee simple as tenants in common, unencumbered by any direct trust restraint, the undersigned hold title to the property subject to the provisions of the Declaration of Trust.”
*403 After the death of Jacob H. Wood, Sr., his sons, Jacob H. Wood, Jr., John Stanley-Wood and Charles H. Wood, filed a suit in Cameron Parish against Hugh W. Darling and William R. Ehni, seeking to be recognized as owners of the property in question by inheritance from their father. This suit was compromised by an instrument styled “Agreement of Transaction and Compromise” executed by plaintiffs and defendants and incorporated in a judgment rendered March 27, 1963. In this compromise agreement, the plaintiffs, Jacob H. Wood, Jr., John Stanley Wood and Charles H. Wood, were recognized as the owners of the fee title to the 1400 acres and William R. Ehni received 15% of the oil, gas and other minerals. At the time the compromise agreement was entered into in 1963, Charles H. Wood was married to and living with Louise Varian Wood. The agreement did not contain the “double declaration” that Charles H. Wood acquired the property with his separate funds for his separate estate.
Charles H. Wood died on April 26, 1969, leaving as his heir his brother, Jacob H. Wood, Jr. Louise Varian Wood died on April 10, 1969, leaving a will in which she named Charles S. Snead as testamentary executor and designated various parties as legatees.
At issue is the one-third interest acquired by Charles H. Wood in the property. If this one-third interest belonged to the separate estate of Charles H. Wood, then it is now owned by his brother, Jacob H. Wood, Jr., subject to various leases, royalty interests, etc. However, if the one-third interest acquired by Charles H. Wood fell into the community, then the estate of Louise Varian Wood owns a one-sixth interest in the property.
LSA-C.C. Article 2334 provides in pertinent part as.follows:
“The property of married persons is divided into separate and common property.
“Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
* * * * * *
“Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared.”
LSA-C.C. Article 2402 also provides in part:
“This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase.”
Under the facts stated above, Charles H. Wood acquired his interest in the property by inheritance from his father, Jacob H. Wood, Sr., and not with profits from property of which he had the administration nor the produce of his industry or labor. It is true that when Jacob H. Wood, Sr. died the property stood of record in the names of Hugh W. Darling and William R. Ehni. However, they later recorded the “Certificate” acknowledging the fact that they held the property only as trustees. This was followed by the suit instituted by Charles H. Wood and his two brothers seeking to be recognized as the owners of the property free of the trust. The suit was compromised by an agreement which recognized that Charles H. Wood and his brothers were the owners of the property by inheritance from their deceased father. Thus, the interest of Charles H. Wood to the disputed *404 property was not acquired from Hugh W. Darling and William R. Ehni. Instead, it was acquired by inheritance from his father, Jacob H. Wood, Sr., at the moment of his death.
In Succession of Land, 212 La. 103, 31 So.2d 609 (1947) the wife acquired certain bonds under an agreement compromising litigation. She had been named as legatee of the bonds in the will of her deceased brother. Other heirs contested the bequest. The suit was compromised under an agreement which gave the wife three-fourths of the bonds and the remaining one-fourth to another heir. Our Supreme Court held that although the property was acquired by the wife during the marriage, the presumption that it fell into the community is overcome by the fact that the wife actually inherited these bonds from her brother.
The jurisprudence involving acts of exchange is also analagous. In Succession of Sonnier, 208 So.2d 562 (La.App.3rd Cir. 1968) we reviewed these cases and held as follows:
“The general rule is that when a married man buys real property in his name, without a dual declaration in the deed that he has purchased the property with his separate, funds and that he intends it for his separate estate, the property so purchased is conclusively presumed to belong to the community. Our Supreme Court has stated, however, that this general rule does not apply in cases where the husband exchanges his separate property for other immovables. In Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925), for instance, the Supreme Court said:
“ ‘It is true the five decisions cited in the original opinion handed down in this case — and there are others to the same effect — maintain that article 2402 of the Civil Code does not apply to contracts of exchange of real estate. Property so acquired during marriage, in the name of either spouse, is substituted for the property given in exchange for it, and has the same status or ownership. If the property given was community property, so is the property received in exchange for it community property; and, if the property given belonged to the separate estate of the party in whose name it is given, so is the property received in the exchange his or her separate property.’ ”
The following hypothesis is persuasive. Suppose that in Succession of Land, supra, and in the present case the parties had not compromised but, instead, a final judgment was rendered recognizing the plaintiffs as the owners of all of the disputed property. Clearly, such a judgment would not be an instrument of acquisition. It would simply be judicial recognition of title acquired through inheritance. It would be illogical to hold that since the plaintiffs compromised and received less than their full inheritance, the property is community.
The principal argument made by Charles S. Snead, as executor, is that the public records did not show that Jacob H. Wood, Sr. owned the property at the time of his death. Hence, the executor says title did not pass from Jacob H. Wood, Sr. to his sons. Snead says that Darling and Ehni had good and merchantable title to the property by virtue of the sale to them dated December 30, 1949 and title passed from them to the Wood heirs. The basic fallacy in this argument is that Darling and Ehni subsequently recognized in the “Certificate” dated April 24, 1951 that they held title only as trustees and did not own the property as individuals under the deed dated December 30, 1949. Of course, this trust had already been recognized by them in the December 27, 1949 “Quitclaim” as being invalid, under the laws of Louisiana. But even if the trust was valid, Charles H. Wood was a principal beneficiary and received his share of the corpus by inheritance or donation. Finally, the effect of the compromise agreement was to remove whatever claim Darling and Ehni had to the property as trustees and to recognize that Charles H. Wood and his brothers had inherited the property from their father.
*405 For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.