HAWTHORNE, Justice.
 

 Mrs. Juanita Easley Geagan, widow of William J. Geagan, Sr., instituted this suit against Wi-lliam J. Geagan, Jr., individually and as testamentary executor of the succession of his father, William J. Geagan, Sr.; Edward F. Geagan, James Waldron Geagan, and Mrs. Ellen M. Geagan Tircuit, brothers and sister of the deceased, and William J. Geagan Lumber Company, Inc., seeking to have 'adjudicated to her certain property which she alleged her deceased husband had disposed of in fraud and with intent to deprive her of her share of the community property.
 

 This litigation arose out of the following facts:
 

 Decedent, William J. Geagan, Sr., was married twice, and of his first marriage one child was 'born, William J. Geagan, Jr. Geagan’s first wife died, and on June 15, 1935, he entered into a second marriage with Juanita Easley, plaintiff herein. No children were born of this marriage. At the time of his second marriage decedent was the owner and sole proprietor of a lumber business in the City of New Orleans, doing business under the name of William J. Geagan Lumber Company.
 

 During the months of July, October, and December, 1936, within approximately 18 months after his marriage, decedent purchased United States Savings Bonds, Series B, in his own name, payable in case of death to his son, William J. Geagan, Jr. These bonds have a face value of $9350.00 and are appraised in the inventory at the sum of $9257.00. These are the bonds which the parties have designated in these proceedings as the 1936 bonds.
 

 In the months of July, 1942, April and September, 1943, and April, 1944, approximately seven to nine years after his second marriage, decedent purchased in the name of his son United States War or Defense Savings Bonds, Series E and F, of the face value of $53,000.00, appraised in the inventory at $40,435.00, which were made payable to him on the son’s death. These bonds have been designated as the 1942-1944 bonds.
 

 
 *292
 
 According to the record, the marriage between Mr. and Mrs. Geagan was not a happy one, and in April, 1944, Mrs. Geagan instituted suit against her husband for separation from bed and board on the ground of cruel treatment, alleging a series of cruelties consisting of cursing, abusing, and beating her. In due time a preliminary injunction issued, restraining Geagan from disposing of the community property, which consisted of the assets of the lumber company and various movable and immovable properties. On June 7, 1944, this suit was dismissed on joint motion, the parties thereto having become reconciled.
 

 On June 14, 1944, shortly after this reconciliation, Geagan purchased a home located at 2601 Calhoun Street for the sum of $6500.00, all on terms of credit, secured by mortgage on the property conveyed. When Geagan died, there wgs a balance of $5000.00 due on this indebtedness. He and his wife resided in this home until his death on September 3, 1946.
 

 On July 14, 1944, a little over a month after the dismissal of the separation suit, in which the wife had obtained a preliminary injunction restraining the husband from disposing of the community property, Geagan organized the William J. Geagan Lumber Company, Inc., and caused to be transferred to this corporation all the assets of the William J. Geagan Lumber Company, consisting of movable and immovable properties. The subscribers to the articles of incorporation were William J. Geagan, Sr.; his brothers, Edward F. and James Waldron Geagan, and his sister Mrs. Ellen M. Geagan Tircuit, and certificates of stock were issued to the subscribers as follows: Certificate No. 1 to William J. Geagan, Sr., 694 shares; Certificate No. 2 to Edward F. Geagan, 10 shares; Certificate No. 3 to James Waldron Geagan, 10 shares, and Certificate No. 4 to Mrs. Tircuit, 30 shares. This corporation was controlled and managed by William J. Geagan, Sr., for a period of approximately two years, until his death on September 3, 1946, and has continued to function.
 

 On May 13, 1946, a few months before his death, Geagan, Sr., surrendered his Certificate No. 1 for 694 shares in the corporation, and in lieu thereof had issued two certificates, one to his son, William J. Geagan, Jr., for 184 shares, and the other to himself for 510 shares. An act of donation was executed by the father as donor and the son as donee in the presence of two witnesses and a notary public under date of May 13, 1946, in which it was declared that Geagan, Sr., gave these 184 shares of stock to his son in consideration of the love and affection which he had for him, the donee.
 

 On July 30, 1946, 60 shares of the capital stock of the corporation were issued to William J. Geagan, Jr.
 

 On July 18, 1946, the corporation purchased in its own name from the State of Louisiana for $10,800.00 in cash certain real estate to be used as a lumber yard.
 

 Geagan, Sr., died on September 3, 1946, leaving a last will and testament in which
 
 *293
 
 he named his son as executor of his estate with full seizin and without bond. William J. Geagan, Jr., in due time qualified as testamentary executor, and an inventory of decedent’s estate was made.
 

 According to this inventory, the community property, which consisted of cash on hand, shares of stock in the William J. Geagan Lumber Company, Inc., household furnishings, the immovable property described as 2601 Calhoun Street, and other miscellaneous properties, was appraised at $73,148.88. Of course this figure did not include the various dispositions of community funds by the decedent during his lifetime, which we have found to total $55,512.50, being the issue price of the 1936 bonds in the sum of $7012.50, that of the 1942-1944 bonds, $39,300.00, and 184 shares of stock in the corporation, similar stock being appraised in the inventory at $50.00 a share, or a total for these 184 shares of $9200.00.
 

 After learning that Mr. Geagan had made the foregoing dispositions of property, Mrs. Geagan instituted this suit. She prayed that she be decreed to be entitled .to one-half, or one-half the value, of the government bonds purchased by her deceased husband; that the formation of the corporation styled “William J. Geagan Lumber Company, Inc.” be decreed a “sham, delusion and snare”, null and void, as having been created for the purpose of defrauding petitioner of her share in the community property, and that the community of acquets and gains be recognized as the owner of the assets thereof, and that she be sent into possession of one-half of the assets; and, further, that a certain sale of movable property made by Geagan, Sr., to the corporation be set aside, and that she be recognized as the owner of one-half of this movable property or one-half the value thereof, and that the purchase of certain immovable property be set aside and decreed null and void.
 

 In the alternative, petitioner prayed that, in the event the court should decree the corporation to be bona fide and lawful, she be recognized as the owner of one-half of 694 shares of the capital stock of the corporation issued to her husband, and that the two transfers or issuance of stock to defendant, William J. Geagan, Jr., on May 13, 1946 (184 shares), and July 30, 1946 (60 shares), be decreed null and void and without effect as being without consideration and in fraud of petitioner’s rights. Further in the alternative, she prayed for judgment on behalf of the succession against the corporation in the sum of $5000.00 as salary due the decedent and earned by him for the last five months of 1944.
 

 In the lower court all the issues were tried, with the consent of all parties, as if the final account had b.een filed in the succession of William J. Geagan, Sr., and the following judgment was rendered:
 

 The United States government bonds which the parties have designated as the 1936 bonds were decreed to be the separate property of the estate of William J. Geagan, Sr.
 

 
 *294
 
 The United States government bonds which have been designated as the 1942-1944 bonds were declared to belong to the community of acquets and gains existing between plaintiff and her deceased husband.
 

 Plaintiff’s claim that the formation of the William J. Geagan Lumber Company, Inc., be declared null and void and that the community of acquets and gains be recognized as the owner o-f the assets thereof was denied.
 

 The 694 shares of stock in the corporation, issued under date of July 15, 1944, to William J. Geagan, Sr., were declared to belong to the community of acquets and gains which existed between plaintiff and her deceased husband, and the plaintiff was declared to be entitled to have transferred to her in her own name and right 347 shares of this stock.
 

 Plaintiff’s claim as to the outstanding shares of stock of the William J. Geagan Lumber Company, Inc., was denied.
 

 Mrs. Geagan’s claim for judgment on behalf of the succession and against the corporation in the sum of $5000.00 as salary due the deceased was denied, with full reservation to the succession to claim such salary in proper proceedings.
 

 All other items on the inventory taken in' these proceedings were approved except two items, Nos. 64 and 65, with reference to which claims were still pending before the lower court.
 

 From this judgment plaintiff, Mrs. Geagan, appealed suspensively, and William J. Geagan, Jr., individually and as testamentary executor, appealed devolutively. All defendants have filed an answer to the appeal of Mrs. Geagan, and she has likewise answered the devolutive appeal, each party praying that the judgment be reversed in so far as his’ or her respective interest was adversely affected.
 

 1936 Bonds
 

 These bonds, as previously pointed out, were United States Savings Bonds, Series B, acquired in the name of, and issued to, William J. Geagan, Sr., and payable in case of death to his son, William J. Geagan, Jr.
 

 Having been purchased during the existence of the community of acquets and gains between decedent and plaintiff-appellant herein, these bonds are presumed, under the provisions of Article 2402 of the Revised Civil Code, to be community property. To overcome this presumption the defendants contend that it was impossible for the decedent to have used community funds to purchase these particular bonds, which were bought during the first 18 months of his marriage with plaintiff, because during this time the total community income was not of a sufficient amount to pay the issue price of these bonds. On the other hand, they contend that he had a separate estate of a sufficient amount out of which he could have paid for the bonds, and they argue that for these
 
 *295
 
 reasons the judgment of the lower court recognizing these bonds to be the separate property of the deceased and belonging to his separate estate should be affirmed.
 

 The record does not show the source of the particular funds used to purchase these government obligations—that is, whether they were funds belonging to his separate estate or community funds or funds commingled belonging to each estate. However, in our opinion, the negative proof that the community did not earn a sum sufficient to make this purchase during the first 18 months of its existence is not sufficient to overcome the presumption that these obligations are community property and were purchased with community funds.
 

 Despite our finding that under the law of this state these bonds are community property, we are bound to give full force and effect to the laws- and regulations governing United States Savings Bonds, as pointed out by this court in Succession of Land, 212 La. 103-, 31 So.2d 609, and, as the purchaser designated his son as beneficiary in case of death, under these laws and regulations we must recognize William J. Geagan, Jr., as full owner of these particular bonds. Conrad v. Conrad, 66 Cal.App.2d 280, 152 P.2d 221; Mitchell et al. v. Edds et al., Tex.Civ.App., 181 S.W.2d 323, affirmed Edds v. Mitchell et al., 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470; Warren, Executrix, v. United States, 68 Ct. of Cl. 634, certiorari denied, 281 U.S. 739, 50 S.Ct. 346, 74 L.Ed. 1154.
 

 However, we will not permit William J. Geagan, Sr., to do by contract with the Federal government what he could not have done by donation mortis causa in this state, that is, dispose of his wife’s share of the community property at his death in favor of a third person; Mrs. Geagan is therefore entitled to judgment against William J. Geagan, individually, in an amount equal to one-half the appraised value of the bonds as of the date of the death of William J. Geagan, Sr.—or $4628.50, which is half of the total appraised value of $9257.-00 as shown on the inventory.
 

 It follows that the judgment of the lower court holding these particular bonds to belong to the separate estate of the decedent will have to be reversed.
 

 Validity of the Corporation
 

 Plaintiff-appellant, Mrs. Juanita Easley Geagan, contends that the formation of the corporation on July 14, 1944, was fraudulent, and that the sale or disposition of the community property to this corporation was by fraud on the part of her husband and to her injury, and that the formation of the corporation should be declared to be null, void, and of no force and effect.
 

 The last paragraph of Article 2404 of the Revised Civil Code provides that, if it be proved that the husband has sold the com
 
 *296
 
 mon property or otherwise disposed of it by fraud to injure his wife, she may have an action against the heirs of her husband in support of her claim in' one-half of the property on her satisfactorily proving the fraud.
 

 It is well to note that, although this article gives the wife a right of action against the heirs of her husband in support of her claim in one-half the property on her satisfactorily proving the fraud, plaintiff in this case did not pray for a judgment against the heir, William J. Geagan, Jr., for one-half of the property transferred to the corporation, but prayed that the community of acquets and gains be recognized as owner of all the assets of the corporation, and that she be recognized as owner of one-half of these assets. We express no opinion as to whether this court could grant the relief prayed for in the pleadings in this matter, since we have reached the conclusion that the corporation was validly and legally formed and that plaintiff-appellant has not been injured by its formation.
 

 The corporation was organized a short time after the dismissal of the separation suit instituted by Mrs. Geagan, in which a preliminary injunction had issued restraining the husband from disposing of the community property. Plaintiff contends that this fact, together with all other facts and circumstances, constituted on the part of her husband fraud to deprive her of her interest in the community property, to her injury.
 

 In this connection she contends also that the stock issued to the other subscribers, the brothers and sister of the deceased, was issued without consideration, or that, if paid for, the payment was made from funds given to these subscribers for this purpose by the deceased.
 

 At the time of the organization of the corporation, Geagan, Sr., transferred to it all the assets of his lumber company, which he had owned and operated many years, and also certain movable and immovable properties consisting of property designated 135 Alonzo Street and a Buick automobile. In consideration of these transfers 694 shares of the capital stock of the corporation were issued to him. All of this property was transferred to the corporation at an appraised value of $69,400.00, for which the 694 shares of stock were issued at $100.00 per share, as shown by the appraisement found in the record.
 

 Plaintiff does not contend that the deceased in organizing this corporation did not comply with the laws of this state with reference to the formation of corporations, and certainly no one will contend that Geagan, Sr., did not have a legal right to organize such a corporation and to transfer property for shares therein so long as the property was transferred for a fair value and stock of equal value was issued therefor.
 

 
 *297
 
 Under the facts in this case, when the deceased transferred to the corporation the property belonging to the community and received in exchange therefor shares of stock in the corporation, the value of the community of acquets and gains which existed between him and his wife was in no way diminished, because the shares of stock represented the property transferred and belonged to the community of acquets and gains existing between the parties, and the surviving spouse in community is not thereby prejudiced in any way.
 

 The formation of the corporation under the facts in this case and the transfer of community property to it at a fair value in exchange for shares of stock of a like value were not a disposition of community property, under the meaning of Article 2404 of the Revised Civil Code, to the injury of the wife, fo.r, as hereinabove pointed out, the shares of stock represented the property transferred, and the wife is entitled to her one-half thereof as surviving spouse in community.
 

 We therefore conclude that there is no merit in plaintiff’s contention, and that she has advanced no valid reason why the formation of the corporation should be decreed null and void. The judgment of the district court in' this respect will be affirmed.
 

 With reference to the 10 shares of stock issued to each of Geagan, Sr.’s brothers, Edward F. and James Waldron Geagan, and the 30 shares to his sister, Mrs. Ellen M. Geagan Tircuit, the evidence is convincing that each of the brothers actually paid in cash to the corporation $1000.00 and the sister $3000.00, on the basis of $100.00 per share, and that all of these amounts were credited on the books of the corporation to its account.
 

 During the years when the deceased was in the lumber business, he from time to time made donations to his brothers and sister in the nature of bonuses, these relatives being employed by the deceased and having rendered valuable services for many years. Both brothers had had opportunities to accept other employment at a larger remuneration, and the sister in addition to valuable services rendered in the business had helped her brother to rear his son. From the evidence we are unable to say that the various sums received by the brothers and sister from decedent were the identical sums used to pay the full amount of their respective stock subscriptions, and, in our opinion, even if so, this is immaterial.
 

 The judgment of the district court denying Mrs. Geagan’s claim as to^ these outstanding shares will be affirmed.
 

 Having found that the corporation was legally and validly formed and that the transfer to it of the community property, under the facts in this case, was valid, we see no reason why we should recognize plaintiff-appellant as the owner of one-half of certain immovable property purchased by the corporation on July 18, 1946, from the
 
 *298
 
 State of Louisiana for the sum of $10,800.-00, on her theory and contention that this property was purchased with community funds, especially since the record shows that the corporation actually paid from its funds the purchase price of this property.
 

 Sixty Shares of Corporate Stock Issued to Geagan, Jr.
 

 The record discloses that on July 30, 1946, Geagan, Jr., purchased from the corporation 60 shares of its stock for $6000.00, and that this full sum was paid by him to the corporation in cash. In order to make this purchase he borrowed $6000.00 from a bank and as evidence of the loan gave his note, endorsed by his father. The bank issued its cashier’s check for the full amount of the loan, less discount. The check bears the following endorsements: “William J. Geagan, Jr.” and “For Deposit William J. Geagan Lbr. Co., Inc.” Geagan, Jr., gave his check to the corporation for $42.00 to make up the full $6000.00. Photostatic copy of the original note evidencing the $6000.00 to Geagan, Jr., photostatic copy of the cashier’s check issued by the bank and made payable to him, and his check to the corporation for $42.00 are in the record. This we think is ample evidence to prove that Geagan, Jr., paid the corporation in full for the stock.
 

 The judgment of the lower court denied Mrs. Geagan’s claim that these 60 shares of stock were issued without consideration and refused to declare the issuance of them null and void. In our opinion this judgment is correct.
 

 Donation of 1942-1944 Bonds and 184 Shares of Stock in the Corporation
 

 The 1942-1944 bonds, United States Savings or Defense Bonds, Series E and F, having a maturity value of $53,000.00, were purchased by the decedent in the name of his son during the existence of the second marriage, and with community funds, the issue price being $39,300.00, and were made payable to him in case of his son’s death.
 

 On May 13, 1946, Certificate No. 5 for 184 shares of the capital stock of the corporation was issued to Geagan, Jr. At this time Geagan, Sr., surrendered his certificate for 694 shares and had another certificate issued to him for 510 shares — that is, in lieu of Certificate No. 1, two certificates were issued, one to Geagan, Sr., for 510 shares, and the other to Geagan, Jr., for 184 shares.
 

 Geagan, Jr., claims that he is the legal and valid owner of these'bonds and shares of stock for the reason that his father made valid donations to him of these particular items.
 

 Plaintiff-appellant on the other hand contends that these donations are invalid, and that they constitute a conveyance or disposition of the community property on the part of her husband by fraud to injure her, under the provisions of Article 2404 of the Revised Civil Code.
 

 
 *299
 
 According to the inventory in this case, the community estate is appraised at a little in excess of $73,000.00, which does not take into consideration the indebtedness due on the common dwelling located at 2601 Calhoun Street amounting to approximately $5000.00. If these donations are valid, it can be readily seen that the husband during the marriage placed beyond the reach of his wife community property in excess of $48,-000.00 — $39,300.00 representing the purchase price of the bonds and $9200.00 the appraised value of the 184 shares of stock. This figure does not take into consideration the 1936 bonds, which we have heretofore discussed, purchased with community funds in the husband’s own name with his son as the designated beneficiary, in the sum of $7012.50. Therefore the total amount of community property disposed of is a sum in excess of $55,000.00.
 

 These figures are given simply to show that the dispositions of community property by decedent were large in proportion to the total value of the community property as shown by the inventory filed herein. We do not mean to imply that a disposition of süch proportion would, of itself, in every case,' be fraudulent or injurious to the wife, or that there is any specific proportionate amount of movable community property which the husband cannot donate validly by particular .title, but the disposal of such a large, proportion of the community becomes important when considered with all the Other facts, and circumstances surrounding this particular case. .. . .
 

 The testimony discloses that during the marriage of Mr. and Mrs. Geagan there was a great deal of marital strife, and that there was not much love existing between them. Mr. Geagan seemed to have a feeling of animosity toward his wife. Plaintiff herself testified that her husband informed her on numerous occasions that he had “fixed things” so that she would not receive any property at his death. That this was his full intent and purpose is clearly shown by the testimony of witnesses who were friends of both husband and wife. They testified that the deceased discussed his marital troubles with them on many occasions and made positive statements that he intended to deprive his wife of as much as he could and that he was going to see to it that his wife “did not get one damn cent”. This last statement was made a short time before his death, while he was seriously ill with heart trouble and fully aware of his condition.
 

 The wife had no knowledge of these two dispositions, amounting to over $48,000.00, until after the death of her husband.
 

 The husband’s animosity toward his wife is reflected by the last will and testament written by him in April, 1945, a little over a year before his death. This will provides that the testator leaves all of his property to his son, William J. Geagan, Jr., and then continues as follows: “I do not desire my wife to have the usufruct on my portion of the estate. .In other words, upon my death I want my son William Joseph Geagan,. Jr.
 
 *300
 
 to inherit my half of the estate with the right to immediate use thereof.” The will then provides that, in the event his son shall predecease him, he leaves all of his property to his brothers and sisters, and this provision is followed by the same declaration as to usufruct and immediate use thereof.
 

 We are convinced that plaintiff has proved that donations of these bonds and shares of stock were invalid, pursuant to the last paragraph of Article 2404 of the Civil Code, for an analysis of the testimony and evidence in this case gives us this overall picture:
 

 Here was a man whose feelings toward his wife were the reverse of tender, affectionate, and protective. He had a son by a previous marriage whom it appeared he loved very much. His animosity toward his wife was deep, hitter, and lasting. He took no pains to conceal this attitude toward his wife, either from her or from other persons. He openly avowed to her and to friends on many occasions that it was his intention and plan to keep from his wife as much of their property as possible when the community should be dissolved at his death. Even in his will he went out of his way to make it plain that, of his share at least, he wished her to derive no profit or benefit. He was a shrewd, clever business man and made use of this quality to carry into effect his vindictive feeling toward his wife. He started out systematically to dispose of large sums of community funds to the prejudice of his wife, and to secure these benefits to his son. In 1936 he bought government bonds in his own name, designating his son as beneficiary. In the years 1942-1944 he bought more government bonds, a large amount this time, and (possibly because he had become more conversant with the laws and regulations governing such contracts with the government) this time purchased them in his son’s name, with himself designated as beneficiary. None of these transactions was known to the wife, and the son had possession of, or access to, all these bonds at the time of the father’s death. He incorporated his business, and by donating 184 shares of stock to his son and allowing him to purchase 60 additional shares he sought to assure eventual control of the corporation to his son. All these transactions were carefully prepared and carried out in legal form in order to circumvent the laws of this state and to prejudice the interests of his wife.
 

 The judgment of the lower court, by decreeing that the 694 shares of stock in the William J. Geagan Lumber Company, Inc., issued as of July 15, 1944, to Geagan, Sr., were community property, and that plaintiff-appellant was entitled to have transferred in her own name and right 347 shares of this stock, indirectly set aside the donation of 184 shares of stock to Geagan, Jr.
 

 The judgment of the lower court decreed the 1942-1944 United States War or Defense Savings Bonds to belong to the community of acquets and gains which existed between Mr. and Mrs. Geagan, thus, also in
 
 *301
 
 effect, setting aside the donation of these bonds to Geagan, Jr.
 

 The judgment in effect setting aside the donation of the shares of stock is correct, and the judgment with reference to the 1942-1944 bonds, in so far as it had the effect of setting aside the donation of the bonds, is also correct, but is erroneous in so far as it decrees the bonds to belong to the community of acquets and gains. With reference to these particular bonds, however, we must, as we have previously pointed out in discussing the 1936 bonds, give full force and effect to the laws and regulations governing these obligations, and, since these bonds were issued in Geagan, Jr’s name, he is entitled under the laws and regulations governing them to their full ownership, but plaintiff, Mrs. Geagan, is entitled to a judgment against the heir of her husband, Geagan, Jr., individually, for a sum equal to one-half their value on the date of Geagan, Sr’s death, September 3, 1946. The value of these bonds on the date of Geagan, Sr.’s death is disclosed to be $40,315.00 by Form F.A.D. 1128 of the Federal Reserve Bank of Atlanta, which is in the record, and therefore Mrs. Geagan is entitled to judgment in her favor in the sum of $20,157.50.
 

 In our opinion the wife should not have to prove fraud and injury in order to set aside gratuitous dispositions of valuable movablp property. In modern times, when movable property may and often does con-, s.titute. the great-bulk'of the wealth,-the; husband should have no more right to dispose of movables gratuitously without the consent of his wife than he has to dispose of immovables. It appears to be a matter of sufficient importance to warrant the Legislature’s giving this provision of our law serious consideration.
 

 Plaintiff-appellant urges that, if her claim that the 1936 and 1942-1944 bonds are community property is recognized by this court, she is entitled to one-half the value of the bonds as of the date of settlement with her. The defendant, William J. Geagan, Jr., contends, on the other hand, that, if plaintiff’s claim as to the status of the bonds is accepted, he should account only for one-half the purchase price of the bonds. Counsel for plaintiff further argues that, if we hold that the defendant, Geagan, Jr., is liable to the plaintiff for only one-half of the purchase price of the bonds, in fairness and equity he should also be charged with legal interest on one-half of the purchase price from the date of purchase to the date of settlement with the plaintiff. No authorities have been cited to support any of these contentions, and we have concluded that the equitable solution in this matter is for the defendant, William J. Geagan, Jr., to pay to Mrs. Geagan one-half of the value of the bonds, as shown by this record, on the date of Mr. Geagan’s death.
 

 Claim for $5000.00 Salary
 

 On July 31, 1944,, the-board of directors of the William J. Geagan Lumber
 
 *302
 
 Company, Inc., adopted a resolution fixing the salaries of its employees who were officers. In this resolution the salary of Geagan, Sr., was fixed at $12,000.00 per calendar year, payable monthly in the sum of $1000.00. This resolution provided that, in the event an employee named therein did not desire to draw his salary when due, the compensation would be permitted to accumulate. The books of the corporation disclose that Geagan, Sr., its president, did not draw any compensation for the months of August through December, 1944, which fact is admitted by counsel for the corporation, and Mrs. Geagan is claiming this amount on behalf of the succession.
 

 The record clearly indicates that the deceased was attentive to the corporation’s business, which was under his direction, control, and management, and no contention is made that he did not earn this salary or that he did not render any services to the corporation during this period of time. Counsel for the corporation rely upon one of its witnesses, a certified public accountant, who testified that, since the books of the corporation were under Geagan, Sr.’s control and since he did not have set up therein the debt due to him by the corporation, this constituted a forgiveness on the part of the deceased for the amount due.
 

 We think that the resolution of the board of directors and the admission of .counsel for the corporation that the deceased did not draw his salary for these particular months, in the absence of any other showing, are sufficient to show that the corporation is indebted to the community estate of the deceased for the full amount of this salary, $5000.00. The opinion of the certified public accountant is not adequate proof that Mr. Geagan forgave this indebtedness.
 

 With reference to this claim, the lower court in its judgment decreed that the matter was not before it for determination in these proceedings and consequently denied the'claim, but with full reservation of the rights of the succession to claim this salary from the corporation in proper proceedings.
 

 Technically speaking, the trial judge may have been correct in his ruling that the question of whether this salary is due to the estate of the decedent is not a matter before the court in these proceedings. However, in these proceedings all issues were tried in the lower court, as previously pointed out by us, with the consent of all parties as if the final account had been filed in the succession, and, since all parties concerned with this claim are before the court —that is, the corporation; Geagan, Jr., individually and as executor of the decedent’s succession, and Mrs. Geagan, surviving spouse in community — , and since evidence has been adduced by the litigants with reference to the claim, we do not think it would serve any useful purpose to deny the claim with full reservation of the rights of the estate to 'assert it in some other proceeding.
 

 Further, this claim was asserted by plaintiff in her petition,, and counsel for the cor
 
 *303
 
 poration and Geagan, Jr., individually and as executor, made no objection to the insertion of the claim in these proceedings, but on the contrary, filed answers in which the claim was denied, and the matter was therefore put at issue.
 

 The judgment of the lower court denying this claim will have to be reversed.
 

 $41,000.00 Claim
 

 In the answer of Geagan, Jr., individually and as testamentary executor, he set forth that his father at the time of his marriage to plaintiff-appellant herein had accumulated an estate of approximately $41,000.00, and that in consequence of this fact the community estate of the decedent is indebted to the separate estate in this sum. In his answer to Mrs. Geagan’s appeal he contends that the judgment of the lower court is erroneous in that it failed to recognize this claim.
 

 The evidence in the record does not satisfactorily establish that the decedent had a separate estate valued at $41,000.00, but, assuming that this is true and that it was the only proof relied upon, we know of no law, nor have counsel cited any, to the effect that at the dissolution of the community it owes each separate estate the value of whatever property the spouse had at the time of'the marriage.
 

 ■For the reasons assigned, the judgment of the lower court decreeing that the United States Savings Bonds, Series B, described in the petition .of Mrs. Juanita Easley Geagan in Articles VIII, IX, and X and as Items 1, 2, and 3 on Exhibit “A” attached to said petition (the 1936 bonds), are the separate property of the estate of William J. Geagan, Sr., is set aside, and it is decreed that William J. Geagan, Jr., be recognized as the full owner of these particular bonds, and that Mrs. Juanita Easley Geagan have judgment against William J. Geagan, Jr., individually, in the full sum of $4,628.50, being one-half of the appraised value of these bonds as of the date of the death of William J. Geagan, Sr.
 

 The judgment of the district court recognizing the community of acquets and gains which existed between plaintiff-appellant and the deceased to be the owner of United States Savings or Defense Bonds, Series E and F, described in Articles XI, XII, XIII, XIV, and XV of plaintiff’s petition and as Items 4, 5, 6, 7, and 8 on Exhibit “A” attached thereto (the 1942-1944 bonds), is set aside, and it is now ordered that the full ownership of these bonds be recognized as in William J. Geagan, Jr., and that Mrs. Juanita Easley Geagan have judgment against William J. Geagan, Jr., individually, in the full sum of $20,157.50, being one-half of the value of these bonds as of the date of the death of William J. Geagan, Sr.
 

 The judgment of the district court denying the claim against the William J. Geagan Lumber Company, Inc., for $5000.-00 as salary due the deceased for the months of August through December, 1944,
 
 *304
 
 is reversed, and it is ordered that there he judgment in favor of the community estate of the deceased, and against the corporation, for this amount.
 

 It is also ordered that the claim of Mrs. Juanita Easley Geagan to the ownership of one-half 0Jt certain immovable property purchased by the William J. Geagan Lumber Company, Inc., from the State of Louisiana on July 18, 1946, for the sum of $10,-800.00 be denied.
 

 It is further ordered that the claim of William J. Geagan, Jr., individually and as testamentary executor, that the community estate owes the separate estate of decedent the sum of $41,000.00 be denied.
 

 In all other respects the judgment appealed from is affirmed.
 

 One-half of the costs of these proceedings is to be paid by William J. Geagan, Jr., individually, and the other half by William J. Geagan Lumber Company, Inc.