AYRES, Judge.
In this action, instituted under the provisions of the Declaratory Judgments Statute, LSA-R.S. 13:4231 et seq., there is sought to be determined the responsibility for the payment of a Federal income tax, assessed against Mrs. Martha Louise Stroud Harris, plaintiff, and predicated upon her net income, including the taxable portion of a capital gain resulting from the voluntary liquidation of the Houston Oil Company, in which she owned 60 shares of capital stock, subject, however, to the usufruct of the defendant, John W. Stewart.
A detailed statement of the facts disclosed by the record will, in our opinion, give aid to a proper understanding of the issues presented for determination. Louise B. Stroud Stewart was married twice, first to Conway Stroud, who predeceased her, and second to John W. Stewart, who survived her. By her first marriage she had one child, Martha Louise Stroud Harris, plaintiff in this proceeding. Mrs. Stewart died intestate January 13, 1953, leaving defendant as her surviving spouse and plaintiff as her only heir. The decedent died rich, leaving a spouse who, in necessitous circumstances, was entitled to the marital portion of her estate, as provided by LSA-C.C. art. 2382. Since deceased was survived by a daughter of a first marriage, the defendant was entitled to one-fourth of the succession in usufruct only. Her estate consisted of valuable real estate, oil and gas royalties, stocks, bonds, cash and other movable property.
The record discloses that, in view of the fact that Mrs. Stewart’s properties were, more or less, of a diversified nature, plaintiff and defendant entered into a partition agreement August 2, 1955, wherein it was agreed that, in lieu of the defendant holding the usufruct on an undivided one-fourth of all of the property of the succession, he would hold and accept the whole usufruct upon the stocks of the succession owned in various companies. All the aspects of a legal usufruct were preserved by the agree•ment. The agreement was approved by a judgment of court dated August 4, 1955, since which time defendant has been receiving all the dividends declared upon said stocks, including the aforesaid 60 shares of stock in the Houston Oil Company, the representative certificate of which was duly surrendered to that Company and a new certificate was issued to Martha Stroud Harris, as naked owner, and John W. Stewart, as usufructuary.
Then followed a liquidation of the Houston Oil Company, in which proceedings a first liquidating dividend on said stock of $9,720 was paid by check jointly to plaintiff and defendant. A final liquidating dividend in the sum of $252 was paid in a similar manner. Following receipt of the first liquidating dividend, which was a forced conversion since neither plaintiff nor defendant desired to sell or dispose of this stock, they entered into a further agreement to reinvest the funds so obtained, and to be obtained from said liquidation pro *230 ceedings, in similar types of securities or stocks of other companies in the name of Mrs. Harris as owner and Stewart as usu-fructuary. A major portion of the funds so received have been reinvested in Dupont stock. That portion of said funds not so reinvested has been deposited in the Commercial National Bank of Shreveport in a joint savings account of plaintiff and defendant, awaiting a legal determination of the responsibility for the payment of the Federal income tax assessed to plaintiff.
Mrs. Harris takes the position that out of the funds received from the liquidation of the aforesaid stock, her income tax should be paid, so far as the same is increased as a result of a capital gain on said stock. She contends that the same procedure should be followed in any further liquidation proceedings. Defendant’s position is that the entire proceeds derived from the liquidation of said stock should be reinvested in similar stocks or securities, and that the aforesaid Federal income tax is a responsibility of Mrs. Harris personally, which she, and not he, is required to pay.
The difference between the inventoried value of the stock and the amount received therefor, that is, $9,972, less $6,900, or $3,-072, represents the capital gain which has caused to be augmented plaintiff’s net income, resulting in a corresponding increase in her income tax, which she has been, or will be, required to pay. By virtue of the first of these liquidating dividends, plaintiff claims her income tax was increased by $1,395 and will be further increased in an amount yet unknown on receipt of the final liquidating dividend.
Plaintiff’s contention is that the income tax resulting from the aforesaid capital gain is a direct tax on the property itself, that is, on the shares of stock, citing Pollock v. Farmers’ Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 139 L.Ed. 759, and that, under LSA-C.C. art. 578, defendant, as usufructuary, is obligated to pay said tax. This position is not entirely correctly taken nor in harmony with the pleadings, wherein defendant is not sought to be held personally liable for the tax but that the amount of such tax be withheld from the funds derived from the liquidation of the stock, and that the allegedly increased portion of her income tax be paid therefrom. This the defendant resists and insists the entire proceeds from the liquidation be invested in similar stocks or securities, the title to which would be in the name of plaintiff as owner, subject to defendant’s usufruct, all in accordance with their agreement.
The district court sustained plaintiff’s position, ordering the deduction of sufficient funds from the aforesaid proceeds to pay the aforesaid portions of her income tax and directing the reinvestment of the remainder in additional securities. From this judgment, the defendant usufructuary has appealed.
There is no issue as to the ownership of the funds arising by virtue of the capital gain. That such funds are the property of Mrs. Harris, plaintiff, is apparently conceded. Certainly she makes no contrary contention. Therefore, it is clearly evident that LSA-C.C. art. 578 has no application here. That article is authority for the proposition that the usufructuary is charged with the obligation of paying the taxes, such as ad valorem taxes and paving assessments, against the property of which he has the usufruct. Plaintiff does not seek here to have defendant pay her income tax but rather that the aforesaid portions thereof be paid from her funds, which would be contrary to the agreement entered into for the reinvestment of such funds. We have been cited no statutory or Codal authority supporting plaintiff’s position. Our independent search has likewise been unsuccessful in that respect.
We are required in all civil matters, where there is no express law, to proceed *231 and decide according to equity, and, to decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent. LSA-C.C. art. 21. Plaintiff, however, will receive no comfort in an equitable proceeding. Plaintiff, of course, is required to pay her income tax and, presumably, from her funds, the tax has been, or will be, paid. In that instance, on termination of the usufruct of defendant, she will come into full ownership and enjoyment of the whole of the funds received from the stock in the liquidation of the Houston Oil Company, or the securities substituted in lieu thereof. Should the tax be now paid out of those funds, she would receive, at the termination of the usufruct only the remainder of such funds, or the securities that such remainder will purchase. Therefore, in any event, plaintiff will pay her income tax. This she will, in effect, do now, or at the termination of the usufruct, regardless of the decree which may be entered in this action. Therefore, in no event will plaintiff’s position be prejudiced.
To the contrary, however, defendant’s position would be prejudiced by the retention of sufficient of the funds for the payment of plaintiff’s income tax in that he would be deprived of the usufruct of the amount thereby expended. But, it may be contended that plaintiff would be adversely affected in a similar manner by the loss of the use and income of her other funds she is obliged to expend in paying her tax. There is a difference, however, in that plaintiff is bound by her agreement with defendant as to the reinvestment of these funds, whereas, other funds of plaintiff are under no restrictions as to use.
These reasons appear sufficient for a determination of the issues presented in this litigation, but other reasons worthy of note lead to the same conclusion.
The ruling in the Pollock case has no application here. In this instance, the tax was not imposed upon income from the stock itself, but was imposed by reason of a capital gain resulting from a sale of the stock. The Federal income statute arbitrarily classifies, for the purpose of taxation, the increase in the value of the stock, as determined after a sale, as income. Then, a certain amount of the increase, designated capital gain, falls into the net income of the taxpayer, who then must pay a tax under a schedule based on the total net taxable income. It is obvious that the tax which plaintiff is required, or will be required to pay cannot be correctly classified as a direct assessment against the property.
The Federal Government is neither concerned with nor interested in the application and enforcement of State laws respecting succession or inheritance of property. The relationship of the tax debtor to,the Government is governed by the appropriate statutory enactments and the regulations of the Treasury Department. These enactments and regulations are for the prime benefit of the Government in the assessment, levy and collection of taxes. The taxpayer’s duties and responsibilities as to the payment of these taxes are governed by such authorities. Nevertheless, the legal relationship of individuals and their contractual obligations under Statp laws are unaffected.
The laws of the Federal Government-and the laws of the several states have their respective spheres of authority. It is often the case that a matter, when viewed in the light of Federal statutes, is governed by one rule of law and governed by another rule of law within the contemplation of a ■State law. Therefore, even though it were held in the Pollock case that income tax on rentals of real estate is in reality a tax upon the realty itself so far as the Federal law is concerned, it is neither controlling nor decisive here. Such has been recognized, in many instances, particularly with reference to U. S. Savings Bonds payable to two or more co-owners, concerning *232 which the Louisiana Supreme Court, in the Succession of Gladney, 223 La. 949, 67 So.2d 547, 549, stated:
“There is no need of the federal government in its contractual regulations with its bondholders to encroach on the law of Louisiana, when a reasonable construction can be given to both federal regulations and our State laws.
“We are aware that the 1949 Code of Federal Regulations — Title 31, Money and Finance, § 315:45 prescribes :
“ ‘If either coowner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor. If the survivor requests reissue, he must present proof of the death of the other coowner. If a coowner dies after he has presented and surrendered the bond for payment, payment of the bond or check if one has been issued will be made to his estate. * * *’
“We have on several occasions held that the bonds will be paid in accordance with the stated contract, beneficiary or co-owner, but the payee or beneficiary is a debtor of the former owner or his heir. Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R.2d 1216; Succession of Geagan, supra [212 La. 574, 33 So.2d 118]; and Succession of Land, 212 La. 103, 31 So.2d 609, and Winsberg v. Winsberg, supra [220 La. 398, 56 So.2d 730].
“In Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730, legal lanes of navigation were set out on which we should chart our course with relation to the exception of no cause' of action. That decision with particularity described first the reason for the governmental regulation and, secondly, considered, in the light of consequences, the regulation applied to the Tenth Amendment of the Constitution of the United States. There the Court aptly stated, 220 La. at page 404, 56 So.2d at page 732:
“ * * Federal Government is neither concerned with nor interested in the application and enforcement of State laws respecting succession or inheritance of property. Indeed, it seems manifest that the regulations of the Treasury Department for the payment of savings bonds (relied on by defendant in this case), were designed solely to facilitate the Government, by providing a simple method for the liquidation of these obligations, so that it would not be subjected to the inconvenience and delays attendant to the settlement of conflicting or disputed claims. There was not, in our opinion, any intention to interfere with the enforcement of the laws of descent and distribution of the various States.
“The facts of the Winsberg case supra and the instant case are not identical, but the principle of law involved is the same.
“Further, in the Winsberg case, 220 La. at page 406, 56 So.2d at page 732, it is stated:
“ * * And, while Louisiana may not require that the bonds be paid to anyone other than the named beneficiary, it undoubtedly has the power, which was reserved to it by the Tenth Amendment of the Federal Constitution, to decree that the beneficiary or payee is indebted to the estate of the former owner, or his heir, in an amount equal to the value of the gift.’ ”
*233 The question here involved as between plaintiff and defendant as to their legal and contractual relationship and obligations is governed by the laws of this State, unaffected by any Federal enactment or regulation governing the incidental relationship of one or either of the parties with the Federal Government, as is clearly demonstrated in the Succession of Gladney and the authorities therein cited.
However, it would appear foreign to our system of law, inconsistent with reason, and without practical application to the facts to hold that an income tax derived from rents, revenues or otherwise from property, real or personal, is a direct tax upon the property itself. The income tax is predicated upon the net income of the taxpayer from whatever source or sources derived. These may be many, and are often varied, such as wages, profit from sales, fruits, rents and produce of property. All the income from all sources, and not a portion thereof from a particular source, constitutes the basis of the tax and determines the rate or bracket within which the tax is determined and assessed. In the instant case, Mrs. Harris’ income was from many sources. No income from any single source could be arbitrarily selected to come within any particular rate bracket. It is conceivable that plaintiff might take the position, as she evidently did, that the portion of the taxable gain attributable to the stock should be given a place at the top of her income and thereby subjected to the rate in the highest bracket applicable to the total of her net income, whereas, defendant, with as much reason, might contend this income be assigned a place or status in her total income so as to be taxable under the lowest rate provided. It is illogical that any particular income constituting only a portion of a taxpayer’s net should be assigned any particular bracket or rate which may be applicable to plaintiff.
Moreover, the aforesaid capital gain never arose or came into existence until the property itself, that is, the stock, was sold. How could it be contended that the assessment of the income tax was a direct tax on the property itself, no longer owned, controlled or in possession of the tax debtor ? That the answer is in the negative is obvious.
From the aforesaid ’ reasons, the conclusion is inescapable that defendant is not chargeable with the responsibility of paying plaintiff’s income tax; that, as between plaintiff and defendant, plaintiff’s income tax constitutes neither a direct tax against nor a levy upon the shares of stock in the Houston Oil Company or the proceeds received from the liquidation thereof; that, legally and equitably, plaintiff’s income tax should not be paid from property or funds upon which defendant enjoys a usufruct, and that the entire proceeds from the liquidation of the aforesaid stock should be reinvested in similar securities or stocks, the ownership of which would be in plaintiff, subject to defendant’s usufruct thereof, in accordance with the agreement entered into between them continuing in effect, for all practical purposes, the legal usufruct which defendant enjoyed upon the property and effects of the Succession of Mrs. Louise B. Stroud Stewart, deceased.
Accordingly, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed that plaintiff’s demands be rejected, and further that the entire proceeds derived from the 60 shares of stock in the sum of $9,972 in the liquidation of the Houston Oil Company be invested in similar stock or securities, the plaintiff to have the naked ownership thereof and the defendant the usufruct.
It is further ordered, adjudged and decreed that the plaintiff pay the costs, including cost of this appeal.
Reversed and rendered.